# Richmond.

NORFOLK & WESTERN RAILWAY Co. v. BONDURANT'S ADMIN-
ISTRATOR.

November 21, 1907.

Absent, Cardwell, J.

1. RAILROADS—*Infant Servants—Rule Excluding—False Representation as
to Age.*—A general rule of a railroad company which forbids the
employment of infants in its train service, is a reasonable rule, and
an infant who, with knowledge of such rule, obtains service with
the company by falsely representing himself to be of age, and is
injured in the course of such service by reason of the negligence
of the company's servants, cannot recover damages of the company
for such injury, although his infancy in no way contributed to
his injury. His position is that of a trespasser, or at most a bare
licensee, to whom the company stands in no contractual relation
and owes no other duty than not to injure him recklessly, wantonly,
or wilfully.

2. APPEAL AND ERROR—*Assignment of Error.*—A petition for a writ of
error is sufficient if the points upon which reliance is had for a
reversal are clearly stated and leave no doubt as to the questions
presented for consideration, although it does not specifically state
that the ruling of the trial court on this point or on that is as-
signed as error.

Error to a judgment of the Circuit Court of Amherst county
in an action of trespass on the case. Judgment for the plain-
tiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

After all the evidence had been introduced, the plaintiff asked

the following instructions, which were given over the objection of the defendant, and the defendant excepted:

"1. The court instructs the jury that if they believe from the evidence that the defendant, through its duly authorized agents, issued and delivered to the plaintiff's intestate, C. N. Bondurant, the written instrument or permit which had been introduced in evidence marked Exhibit 'A' with the testimony of J. J. Whitlow; and if they further believe from the evidence that, at the time of his injury and death, he was upon one of the defendant's freight engines, for the purpose, and on the division, set forth therein, then it was the duty of the defendant, and of its agents and servants in charge of and operating trains of cars, upon which he was not at the time of his injury, to exercise ordinary care in the operation thereof, so as not to unnecessarily endanger him, and their failure to perform that duty would be negligence.

"2. The court instructs the jury that if they believe from the evidence that the permit mentioned in instruction No. 1 was obtained by the plaintiff's intestate by falsely representing himself to be over the age of 21 years, then, while the said intestate was riding upon the defendant's engine, by virtue thereof, the defendant owed him the exercise, only, of such ordinary care as it would have owed him had he in fact been over the age of twenty-one years; but it did owe him such ordinary care as it would have owed him if an adult, notwithstanding such misrepresentation.

"3. The court instructs the jury that if they believe from the evidence that the plaintiff was killed by the negligence of the defendant, its agents and servants, as set forth in the declaration, they must find for the plaintiff; notwithstanding the waiver by the plaintiff's intestate as contained in the permit, mentioned in instruction No. 1."

The defendant then tendered the following instructions, which the court refused, and the defendant again excepted:

"1. The court instructs the jury that, under the permit issued by the defendant to C. N. Bondurant, and upon which he was riding at the time of the accident complained of, said Bondurant was not a servant of the defendant, but only a licensee to whom was not due the care and caution owing by a master to a servant.

"2. The court instructs the jury that a railway company does not owe to a licensee the duty of employing competent servants to manage its trains, or to run them in a particular manner, or at a particular rate of speed.

"3. The court instructs the jury that, if they believe from the evidence that the plaintiff's intestate, in order to enter the service of the defendant company, falsely represented that he was over twenty-one years of age, when he knew, or had good reason to know, that such statement was not true, and that the rules of the defendant forbade the employment of minors in its operating department, they must find a verdict for the defendant.

"4. The court instructs the jury that if they believe from the evidence that C. N. Bondurant made application for the service as fireman with the defendant on May 3, 1906, and stated in said application that he was over twenty-one years of age; that said statement was false, and that Bondurant knew, or had good reason to know, that the same was not true; that the defendant's rules forbade the employment in its train service of minors; that acting upon the statement as to his age, and with no knowledge of its falsity, the defendant issued to said Bondurant the permit set forth in the declaration, and that while upon one of defendant's engines pursuant to said permit, he received injuries which resulted in his death, then the jury must find a verdict for the defendant."

*F. S. Kirkpatrick,* for the plaintiff in error.

*Lee & Howard,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

C. N. Bondurant, the plaintiff's intestate, was killed in May, 1906, by a rear-end collision upon the Norfolk and Western railroad, under circumstances which, it is conceded, would, as against a passenger or an employee of the railroad company, have constituted actionable negligence.

The young man who was killed desired to become a fireman on the Norfolk and Western railroad, and to learn the duties of that position, filed an application on May 3, 1906, in which, in reply to one of the printed questions, he stated that he was born on the 27th day of April, 1884, and was, therefore, on the date of the application, in his 22nd year. One of the rules of the company provides that, "Minors must not be employed without the written consent of parents or guardians on prescribed form, which must be filed with personal records, and must not, under any circumstances, be employed in the train service."

The evidence tends to show that, while young Bondurant may not have known of the precise terms of this rule, he did know, and his attention was specifically directed to, the fact, that the rules of the company forbade the employment of infants.

Upon his written application, a permit was granted to him, which is set forth in the declaration in the following words: "Permit the bearer, C. N. Bondurant, upon presentation of this order, duly signed by him and witnessed, to ride on freight engines of the company for the purpose of learning the duties of a fireman, for duty as a fireman in the service of the company hereafter.

"It is understood and agreed, that Mr. C. N. Bondurant uses this permit at his own risk and expense, without compensation; that he assumes all hazard and risk of personal injury and damages, whether arising from negligence of the Norfolk and Western Railway Company or its employees or otherwise, and that the Norfolk and Western Railway Company shall not be

held liable for any injury so sustained or for any damages resulting therefrom.

"This permit is not good on passenger engines, and expires June 3, 1906.

"L. P. Ligon,

"Division Master Mechanic."

"I, C. N. Bondurant, the applicant above mentioned, do hereby accept and agree to the terms and stipulations of the above permit, and I do certify that I am more than twenty-one years of age.

"Witness my signature this 3rd day of May, 1906.

"C. N. Bondurant.

Witness: C. M. Mays."

It was under these circumstances that C. N. Bondurant was upon the engine at the time he received the fatal injury, for which his administrator brings this suit.

At the instance of the defendant in error, four instructions were given to the jury, to which the plaintiff in error excepted; and four instructions were asked for by the plaintiff in error, to the refusal of which, on the part of the court, an exception was also noted.

The controlling question is: What was the duty and degree of care owed by the railway company to defendant in error's intestate under the circumstances of this case?

The theory upon which the case was tried, the verdict rendered, and the judgment entered, was that there was a contractual relation between the deceased and the railway company, by which he became an employee, to whom the defendant owed the duty of ordinary care. In other words, that the relation existing between Bondurant and the company was that of master and servant, with all the mutual duties and responsibilities which that relation implies. The contention on behalf of the plaintiff in error is that young Bondurant was a trespasser to

whom the company owed no duty except not to injure him wantonly, recklessly, or wilfully.

A student fireman may, or may not, be an employee; whether he is or not in a particular case, depends upon circumstances.

In *Weisser* v. *Southern Pacific Ry. Co.,* 148 Cal. 426, 83 Pac. Rep. 439, cited by defendant in error, it was held that a student brakeman, on freight trains of defendant at his own request and by permission of defendant, for the purpose of gaining experience to render him competent to act as a regular brakeman, and who was entirely subject to defendant's orders, and was required to perform such ordinary duties of brakeman as were allotted to him, was a fellow servant of the other brakemen, although he was receiving no pecuniary compensation.

So, in *Barston's Admr.* v. *Old Colony R. Co.,* 143 Mass. 535, 10 N. E. 255, it was held, that if a person undertake voluntarily to perform service for a corporation, and the agent of such corporation assents to his performing such service, he stands in the relation of a servant of the corporation while so engaged; which is the proposition in this case for which we presume it was cited by the defendant in error, and as to the correctness of which there can be no doubt.

In *Hewett* v. *Woman's Hospital Aid Association,* 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 496, it was held, that a pupil nurse, employed in a hospital maintained by a charitable corporation, under a contract whereby she is to receive professional training, and be paid a small remuneration, is a servant of the corporation, and not a recipient of its bounty. It appears in that case that the plaintiff was 19 years of age, and that the hospital authorities put her in charge of a case of diphtheria without disclosing to her the nature of the malady. She contracted the disease, and brought suit for the wrong done her. The question discussed in the case was whether or not a charitable corporation which is engaged in the maintenance of a hospital, and which holds its property for that general purpose, is liable for injuries resulting from a negligent failure to warn

its servants concerning the nature of their employment; and the hospital was held to be liable.

In *Millsap's Admr.* v. *Louisville &c. Ry. Co.,* 69 Miss. 423, 13 South. 696, it was held that one who, by permission of a railway company acts as fireman of its locomotive, is a servant of the company, though he acts without compensation merely to learn the business. He was also held to be a fellow servant of the train dispatcher, whose negligence caused the injury, and, therefore, a recovery was denied.

But, in none of these cases was there misrepresentation as to .age, or a rule prohibiting the employment of infants.

In the case of *Youll* v. *Sioux City & Pac. Ry. Co.,* reported in 66 Ia. 346, 23 N. W. 736, 21 A. & E. Railroad Cas. 589, the supreme court of Iowa held that the mere fact that a brakeman injured was a minor will not entitle him to recover for such injury, if he was physically able to perform the duties he was ·employed to do, and, in the absence of evidence to the contrary, it will be presumed that he was of ordinary intelligence. There the contention seems to have been that the infant was entitled to recover under circumstances which would have precluded a recovery had he been an adult; but the court being of opinion, in the absence of evidence to the contrary, that he was a person ·of ordinary intelligence, held that the railroad company was not negligent in employing him as a brakeman, there being no evidence to show that he was inexperienced in the duties of that position; that he was to be treated for the purposes of that case .as an adult; and that he could not recover.

As we have said, in all of these cases there is an absence of two circumstances upon which plaintiff in error rests its case—first, that the railroad company prohibited the employment of an infant; and, second, that the deceased, by misrepresenting his age, obtained permission to ride upon the engine where he was injured.

Defendant in error also relies on *Kirkham* v. *Wheeler-Osgood Co.,* 39 Wash. 415, 81 Pac. 869. In that case, the state of

Washington prohibited by law the employment of infants under 14 years of age; and the infant represented himself as over 14 years of age, when, in point of fact, he was only 12. The court held broadly that infants are not liable for torts connected with or growing out of contracts, and the doctrine of estoppel *in pais* does not apply to them. In support of the opinion, *Sims* v. *Everhardt,* 102 U. S. 300, 26 L. Ed. 87, is cited, where the court said: "The question is, whether acts and declarations of an infant during infancy can estop him from asserting the invalidity of his deed after he has attained his majority. In regard to this, there can be no doubt founded either upon reason or authority. Without spending time to look at the reason, the authorities are all one way. An estoppel *in pais* is not applicable to infants, and a fraudulent representation of capacity cannot be an equivalent for actual capacity."

In the *Kirkham case,* the railroad company had violated a positive law by employing an infant within the prohibited age, and it differs in its facts from the case before us.

Cases of negligence have become so numerous that it is impossible to discuss all that bear upon the subject, and, therefore, it becomes necessary to select those which are most pertinent.

In the case of *Fitzmaurice* v. *N. Y., N. H., & H. R. Co.,* 192 Mass. 159, 78 N. E. 418, 6 L. R. A. (N. S.) 1146, the facts were as follows: The plaintiff, while riding upon a train of the defendant, was injured by a collision, and no question was made that she would have been entitled to a verdict in her favor if she had been a passenger. She was a minor, and was riding upon a three-months' season ticket, which was good only for students under eighteen years of age. She had obtained this ticket by presenting to the defendant's ticket agent a certificate, purporting to be signed by her father, that she was under eighteen years of age, and was a pupil in the Hollander Art School, Boston, and agreeing that she would not use the ticket otherwise than in going to and from school, and also presenting a certifi-

cate, purporting to be signed by "J. F. Miner, Principal, Hollander Art School, Boylston Street, Boston, Mass.," that she was a pupil in his school, and, as he fully believed, intended to remain so for the next three months.   She was at this time over eighteen years of age, as she testified, lived in Marlboro, and was employed in Hollander's dry goods store in Boston.   The regular price for a season ticket was $32 ; the reduced rate for students under eighteen years of age, at which the plaintiff procured it, was $16.   She had been riding upon this ticket nearly every day, except Sunday, for over a month, and the coupons had been received by the conductor.   Upon the face of the ticket were the words, "Good only for a person under eighteen years of age."   The jury having found the amount of the plaintiff's damages, if she was entitled to recover, the judge ordered a verdict for the defendant.   Upon this state of facts, the supreme court of Massachusetts held:  "The defendant had the right to establish a reduced rate for students under a fixed age. * * *   The plaintiff knew that she did not come within the class to which this offer of a reduced rate was made, and obtained her ticket by presenting certificates of facts which she knew to be false.   She thus obtained by false representations a ticket to which she knew that she was not entitled.   Whatever rights she had to be regarded as a passenger on the defendant's train she had acquired solely by the fraud which she had practiced upon the defendant.   She had no right to profit by her fraud.   She had no right to rely upon the consent of the railway company to her entering its train as a passenger, when she had obtained that consent merely by gross misrepresentations. Accordingly she was not lawfully upon the defendant's train. She was in no better position than that of a mere trespasser. This principle has been affirmed in other jurisdictions.   Thus it has been held that a person travelling over a railroad on a free pass or a mileage ticket which had been issued to another name, and was not transferable, was barred by his fraudulent conduct, from recovering for a personal injury, unless it was

due to negligence so gross as to show a wilful injury.  *Toledo, W. & W. R. Co.* v. *Beggs,* 85 Ill. 70, 28 Am: St. Rep. 613; *Way* v. *Chicago, R. I. & P. R. Co.,* 64 Ia. 48, 52 Am. St. Rep. 431, 19 N. W. 828.  If the plaintiff had fradulently evaded the payment of any fare, she certainly would not have become a passenger, and the defendant's utmost duty to her while she was upon its train would have been to abstain from doing her any wilful or reckless injury.  *Condran* v. *Chicago, M. & St. P. R. Co.,* 28 L. R. A. 749, 14 C. C. A. 506, 32 U. S. App. 182, 67 Fed. 522; *Toledo, W. & W. R. Co.* v. *Brooks,* 81 Ill. 245; *Chicago, B. & Q. R. Co.* v. *Mehlsack,* 131 Ill. 61, 19 Am. St. Rep. 17, 22, N. E. 812.  But such a case cannot be distinguished in principle from the case at bar, in which the plaintiff obtained her ticket at a reduced price by successfully practicing a fraud.  The only relation which existed between the plaintiff and defendant was induced by her fraud; and, as was said by the court in *Way* v. *Chicago, R. I. & P. R. Co., ubi supra,* she cannot be allowed to set up that relation against the defendant as a basis of recovery.  See also, to the same effect, *Godfrey* v. *Ohio·& M. R. Co.,* 116 Ind. 30, 18 N. E. 61; *McVeety* v. *St. Paul, M. & M. R. Co.,* 45 Minn. 268, 11 L. R. A. 174, 22 Am. St. Rep. 728, 47 N. W. 809; *McNeil* v. *Durham & C. R. Co.,* 132 N. C. 510, 67 L. R. A. 227, 95 Am. St. Rep. 641, 44 S. E. 34.

"Nor is the plaintiff helped by the fact that the defendant's conductors had accepted the coupons of her ticket.  This simply showed that she had succeeded in carrying her scheme to completion.  There had been a similar acceptance by the conductor in *Way* v. *Chicago, R. I. & P. R. Co.* and *Toledo, W. & W. R. Co.* v. *Beggs, ubi supra.*  If the defendant's conductors did not know the real facts, their acceptance of her coupons could have no effect; if they knew the facts and acquiesced in the plaintiff's wrongful purpose, this conduct could give her no additional rights.  *McVeety* v. *St. Paul, M. & M. R. Co.,* and *Condran* v. *Chicago, M. & St. P. R. Co., ubi supra.*"

This case is annotated in 6 L. R. A. (N. S.) 1146, and a number of cases, not cited in the opinion, are mentioned in the note; and it seems to us to be not only good law, but good morals as well.   It so completely covers the case under consideration, and is so well supported by the reasoning of the court and the authorities cited, that we are content to rest upon it.

Defendant in error relies also upon the argument that there was no relation between the misrepresentation of Bondurant as to his age and the accident by which he was injured.

It is true, that his being an infant in no way contributed to the accident.   It is equally true, that in *Fitzmaurice* v. *Railroad, supra,* the fact that plaintiff was over eighteen years of age in no wise contributed to the accident.   Doubtless the accident would have taken place whether Bondurant had been upon the engine or not; but if he had not been upon the engine, he would not have been injured by the collision.   The controlling question in this case, however, is, in what relation did the intestate of the defendant in error stand to the railroad company at the time of the injury, and what duty did the railroad company owe to him?   It is as true of him as it was of Miss Fitzmaurice that the only relation which existed between him and the railroad company was induced by fraud.   But for his fraud and misrepresentation, he could never have been upon the engine. He was, therefore, a trespasser, or at most a bare licensee, to whom the railroad company stood in no contractual relation and owed no other duty than not to injure him recklessly, wantonly or wilfully.

The law is settled that it is one of the primary non-assignable duties of a corporation with a large number of employees, performing difficult and dangerous duties, to prescribe and promulgate rules for their government.   In the performance of its duty, the Norfolk and Western Railway Company adopted a rule prohibiting the employment of infants under 21 years of age, without the consent of parents or guardian.   It is a reasonable and salutary rule, from whatever point of view it may be con-

sidered. It shields and safeguards the infant from the consequences of his inexperience and temerity, and promotes the safety of the public by securing mature and efficient employees for the discharge of the dangerous and difficult duties pertaining to a common carrier of passengers and freight. It would be a hard measure of justice to hold a company responsible, on the one hand, for failure to prescribe rules, and on the other, to refuse to protect it from the consequences of the violation of reasonable and proper rules, adopted and promulgated in the discharge of the duty imposed by law.

There is neither averment nor proof that the injury was inflicted recklessly, wantonly or wilfully. We are, therefore, of opinion that it was error to give the instructions asked for by defendant in error, and to refuse to give those asked for by plaintiff in error.

· The point is made by defendant in error that there is no proper assignment of errors in the petition in this case. As we have seen, instructions were asked for on the part of the plaintiff and defendant, all of which are covered by plaintiff in error's bills of exception, and while it is not specifically stated in the petition that the ruling of the court upon this point or upon that is assigned as error, the points upon which reliance is had to secure a reversal are clearly stated, and can leave no doubt as to the questions presented for our consideration.

Upon the whole case, we are of opinion that the judgment of the circuit court should be reversed, and a new trial awarded.

*Reversed.*