## Staunton

GEORGE E. ALLEN *v.* HIS EXCELLENCY, HARRY FLOOD BYRD, GOVERNOR OF VIRGINIA.

September 20, 1928.

*Geo. E. Allen*, for the petitioner.

*John R. Saunders, Attorney-General*, for the Governor.

PER CURIAM.

The petitioner, who is a citizen and taxpayer of the State of Virginia and a member of the bar of this court, duly licensed, has filed his petition against the Governor, in which he prays for a mandamus requiring the Governor to appoint two judges of this court, alleging that in declining to do so he is refusing to perform a mandatory ministerial duty enjoined upon him by the Constitution and laws of Virginia, and that "he is vested with no discretion except in regard to the persons whom he will appoint."

The Governor has appeared and filed a demurrer, as to which it may be said, generally, that issue is taken upon all of the contentions made in the petition.

The basic and primary question to be determined is whether or not the duty imposed is merely a ministerial function. It is conceded that unless it be a ministerial function merely, this court has no power to award a peremptory mandamus, and of this there can be no fair doubt.

The question depends upon the construction of certain sections of the Constitution, though Code section 332 is also relied on for the petitioner.

The court is of opinion that section 88 of the Constitution is mandatory and self-executing, and requires that this court shall consist of seven judges. There are now two vacancies, which have existed since the adoption of the amended section of the Constitution, June 19, 1928.

■ ■ Among other things, Constitution, section 73, provides, in referring to the executive power, that "The Governor shall have power, during the recess of the General Assembly, * * * to fill *pro tempore*, vacancies in all offices of the State for the filling of which the Constitution and laws make no other provision. Such appointments to vacancies shall be by commissions to expire at the end of thirty days after the commencement of the next session of the General Assembly."

The paragraph of that section which immediately follows reads: "He shall have power to remit fines and penalties under such rules and regulations as may be prescribed by law; * * *."

Code, section 332, undertakes to supplement this section as to the power of the Governor to fill vacancies, and reads thus: "When a vacancy occurs in any State office, whether the officer be elected by the people or the General Assembly, or be appointed by the Governor, and no other provision is made for filling the same, it shall be filled by the Governor; and if it be an office filled by election by the people, the appointee shall hold said office until the next general election, and thereafter until his successor qualifies, according to law, and if it is to be filled by an election by the General Assembly or appointment by the Governor, and such appointment requires confirmation of the Senate or the General Assembly, he shall hold such office until thirty days after the commencement of the next session of the General Assembly."

In so far as this section accords with and is not in conflict with section 73 of the Constitution, it is valid, and cannot be construed to require, or make mandatory that which the Constitution has made discretionary, for this would be an invalid exercise of the legislative power.

In this case, it is only necessary for us to construe and interpret the Constitution so far as it controls the questions presented.

■ It is most significant that the same language which empowers the Governor to fill vacancies temporarily is also used in conferring the executive function to remit fines and penalties. Of course, no one would contend that this latter power is not an executive discretionary function. If we should construe the same words, conferring upon the Governor power to fill vacancies, to impose a mere ministerial mandatory duty, we should be construing the identical words in the two paragraphs differently. This would be anomalous.

■■ It does not necessarily follow that because a duty imposed is mandatory that it is also ministerial. For example, the Governor "shall take care that the laws be faithfully executed." It seems to us perfectly clear that whether the function be a mandatory duty or a discretionary power, it is in either event an executive function, requiring in its performance the exercise of executive discretion.

■ The case differs from some of those relied on, in which the filling of an office has sometimes been construed to be a ministerial function, in that in some of them the method was exclusive, whereas here the filling of those judgeships by appointment of the Governor is not exclusive. It is only a provision for supplying the vacancies temporarily—that is, until the General Assembly shall convene and elect the judges for the term prescribed in the Constitution. Whether these particular vacancies are supplied by the Governor or not, it certainly will be the duty of the General Assembly, at its next session, to elect the two additional judges so required by the Constitution, as well as to

fill all other vacant judicial offices, and to select the successors of all judges who may be appointed by the Governor in the interval under Constitution, section 73, and Code, section 332.

Suppose the General Assembly were about to convene, say in one, two or three months, could it be successfully maintained that the Governor would not have the discretion to decline to exercise his power to make these appointments, which would necessarily expire within thirty days after the approaching session of the General Assembly commenced, or that it would be an abuse of executive discretion for him to decline to make them because of the immediately impending session? We think that there can be but one proper answer to the query, and this is that the executive could lawfully decline to fill the vacancies under such circumstances. If there can be any circumstance which justify the executive in exercising a discretion to determine whether or when the power should be exercised, then clearly the duty imposed is not merely ministerial but rests in discretion, and if there be any such discretion it follows that the power is not merely ministerial.

These suggestions, as we think, demonstrate our conclusion that the power is not a mere ministerial duty unconditionally prescribed, to be always performed without delay and without reference to time or circumstances, but on the contrary is, as we have concluded, an executive function which can neither be controlled nor directed by mandamus.

It would not be difficult, from the elaborate briefs which have been filed, or upon slight investigation, to write an opinion and collect the authorities. To do this satisfactorily, however, would require more time than we have immediately at our disposal, and similar

questions have been so frequently considered by the courts of this country that it would be an unnecessary labor. The precedents are many and are easily accessible. This case, however, is determined by the single proposition which we have determined, and that is, that the power vested in the Governor to fill these vacancies is not a mere ministerial function.

That the two judgeships here involved may remain vacant for fourteen months longer, that is, until the regular session of the General Assembly of 1930, notwithstanding the provisions of section 88, has led to radical differences of opinion as to public policy, and executive and judicial power as this proceeding indicates. This is most unfortunate, but does not justify any invasion of the executive department by the judicial department. In the constitutional division of powers, each is and should be independent.

*Mandamus denied.*