# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### Roland C. Omohundro v. County of Arlington.

April 20, 1953.

Record No. 4062.

Present, All the Justices.

The opinion states the case.

*William C. Nemeth, George O. Botts, William H. Chadwick,* for plaintiff in error.

*William J. Hassan,* for defendant in error.

Spratley, J., delivered the opinion of the court.

Plaintiff in error, Roland C. Omohundro, stands convicted of operating a motor vehicle over the highways of Arlington County, Virginia, while under the influence of alcoholic beverages, in violation of an ordinance of that county. He was tried by a jury which fixed his punishment at a fine of $100.00. The trial court overruled a motion ''to set aside the verdict of the jury as being contrary to the law and the evidence,'' and entered judgment and sentence accordingly. We granted writ of error.

The evidence in the case was not recorded at the time of trial. It is presented to us in narrative form by a stipulation of the parties, which admittedly does not contain all of the facts and testimony adduced. Consequently, we are required to review the case upon the evidence contained in the stipulation only. Analyzed and summarized, the following facts and circumstances appear therefrom:

Police Officer C. C. Pearson observed Omohundro driving his automobile ''south on Glebe Road in Arlington County, weaving back and forth over the said road, passing over the double white lines on the left side, and then passing back to the shoulder on the right side of the road, and by his action making it necessary for the oncoming traffic to pull off the road to avoid striking the defendant.'' Upon being commanded to stop, defendant stopped ''squarely in the middle of his lane without any attempt to pull over to the side, where ample space was available.'' He merely stared at the officer speaking to him. Another officer, Huber, then had to get out of the police squad car and request defendant to drive to the side of the road before he complied. Officer Pearson said the eyes of the defendant were ''bloodshot and staring;'' that his speech was ''incoherent''; and the odor of alcohol was ''definitely present'' upon his breath. Upon being asked if he was sick, defendant said ''No.'' He was arrested, placed in the police car and taken to the police station. En route he first said that he had drunk one or two beers. Later he said two or three beers, and upon arrival at the station, he said he had consumed ''three to five beers,'' between the hours of three and five that afternoon.

County Police Officer Huber corroborated Officer Pearson's

testimony as to the "zig-zagging" of the vehicle driven by the defendant and his physical appearance. He said that he assisted the defendant in going down some steps to the booking desk of the police station.

An empty bottle, which Officer Pearson said previously contained an alcoholic beverage, was offered in evidence. Pearson said that he had taken the bottle from the possession of Omohundro, and delivered it to the desk clerk of the County Police Department about four months before the trial. The bottle was identified by means of a tag affixed to its neck. On the tag was the following data: "In car owned and driven by Roland C. Omohundro charged with D. W. D., 8/28/51, 7:15 P. M., signed by Pearson and Huber; Property No. 1693-F4, W. T. H."

Defendant objected to the presentation of the bottle on the ground that it was not properly identified, in that the Commonwealth failed to produce all of the witnesses who had access to or custody of the bottle prior to the trial. The objection was overruled. Defendant excepted. The defendant, however, admitted in his subsequent testimony that the bottle in question belonged to him. He stated that it was used by him for the purpose of carrying a type of cleaning fluid used in his occupation as a printer in the Bureau of Engraving and Printing in Washington, D. C.

County Police Officer A. Fuschman testified that after obtaining the voluntary consent of the defendant, he gave the latter an "alcoholic influence examination." He observed that the "balance" of the defendant was fair, and his "walking and turning" fair to uncertain; that in both the "finger to nose" and "picking up coins" tests he was uncertain; that his clothes were "orderly;" and that "his attitude polite, cooperative, but very talkative." He furthermore observed that the eyes of the defendant were watery and bloodshot and his speech "fair." In addition, Fuschman said that he tested the alcoholic content of the breath of the defendant through the use of a machine commonly known as the "Drunk-O-Meter," and that the reading of the machine was ".21."

It was brought out that Fuschman was a high school graduate, had not attended college, nor taken a course in chemistry; that he had not made a control test of the "Drunk-O-Meter" machine immediately before or after the test was given to the defendant; and that he did not know whether or not the machine

was accurate; that his entire training in the use of the machine consisted of approximately two days' instruction, and he had never had any laboratory training or instruction in the analysis and evaluation of such tests.

According to the record, defendant objected "to the introduction of such 'Drunk-O-Meter' evidence on the grounds that the operator of the said machine was not qualified as an expert to operate the said machine and further was not qualified to give his opinion as to the results and analysis of such results as evidenced by the test given by the said witness, A. Fuschman, on direct and cross-examination." The objection was overruled, and defendant excepted.

Dr. William Doland, a qualified pathologist and research specialist in the analysis of the blood and breath for alcoholic content, testified as to the accuracy of the particular machine used in this case, and said that he had found it to be "approximately correct with a slight degree of error." He admitted he had not used the machine for a month prior to the test given the defendant. He said that a person did not need extensive training as a mere operator of the machine and, in his opinion, Officer Fuschman was qualified as a competent operator. He agreed that more accurate results could be obtained by a dual test consisting of an actual blood extraction and analysis thereof, and a comparison of that analysis with the results of a breath test and analysis, which had not been made in this particular instance.

Upon behalf of the defendant, Dr. Richard Kelsey, also a qualified pathologist and research specialist in the same field as that of Dr. Doland, testified that a person giving such a test as the one introduced into evidence should have laboratory training of at least nine to eighteen months in order to be a properly qualified technician, skilled in the use of and analysis of the "Drunk-O-Meter" machine.

Although the defendant testified in his own behalf, the stipulation of facts does not contain any of his testimony other than his statement relative to the empty bottle. There is no contradiction of the evidence of the officers as to his physical condition.

The jury was fairly and fully instructed. Included in the instructions was this one:

"The Court further instructs the jury that the findings of

the 'drunk-o-meter' test, as admitted to evidence in this case, are not conclusive or binding upon the jury nor do such findings raise any presumption at law of the guilt of the defendant, but the jury is to give only such weight to this evidence as they might think it is entitled to, and the jury is the sole and exclusive judge of the testimony and the weight which it is to be given; and in this connection, it is proper for the jury to consider and weigh this evidence with all of the other evidence in the cause in arriving at their verdict.''

■ The appellant originally set out three assignments of error. The first assignment alleged that the trial court erred in admitting into evidence the empty bottle found in defendant's car, because it had not been sufficiently identified. This assignment overlooks defendant's admission that the bottle belonged to him, and we need not be concerned with it further. An assignment relating to the refusal of the trial court to give a certain instruction requested by the defendant was abandoned by the latter in his brief.

■ The sole question for our consideration is presented by the remaining assignment, which alleged that the trial court erred in permitting Officer Fuschman to testify, because he was not properly qualified to give the ''Drunk-O-Meter'' test, due to a lack of technical education and training in that field.

The record does not show that any objection was made to the use of the ''Drunk-O-Meter'' machine as such, or as to its reliability when operated by a competent person. In the trial court, as we have stated, the defendant objected to the evidence relating to the ''Drunk-O-Meter'' test on the grounds that Fuschman was not qualified either to operate the said machine or to give an opinion as to results obtained from its operation. In his brief, he continues to lay much stress on the contention that Fuschman was allowed to render an opinion as to the results of the test made by the machine. The stipulation of facts does not show that Fuschman either analyzed the results of the test or expressed any opinion with reference thereto. It merely shows that Fuschman testified only as to his observation of the physical condition of the defendant and as to the number of the reading which he obtained from the ''Drunk-O-Meter'' test. He did not, as an expert or layman, undertake to interpret or analyze what the reading ''.21'' meant, nor express any opinion in that respect.

We can consider only the evidence presented in the record. Questions raised in the brief about evidence not shown in the record cannot be considered by us. The purpose of exceptions in the court below and assignments of error in this court is to point out the specific error committed by the trial court. Counsel should be required to "lay his finger on the error." *Bank* v. *Trigg Co.*, 106 Va. 327, 342, 56 S. E. 158. "Only errors so assigned will be noticed by this Court." Rule of Court 5:1, § 4. *Puckett* v. *Commonwealth*, 134 Va. 574, 579, 113 S. E. 853; *Wash* v. *Holland*, 166 Va. 45, 50, 183 S. E. 236; *Nicholas* v. *Harnsberger*, 180 Va. 203, 208, 22 S. E. 2d 23.

Even if Fuschman was incompetent to testify as to the reading of the machine, his evidence could not have prejudiced the defendant, since it is no where shown in the record what the reading meant. His testimony as to reading ".21," without more, conveyed no information or opinion to a layman or juror unacquainted with the scientific signification of that number.

■ Dr. Doland, who was familiar with the operation of the "Drunk-O-Meter," said positively that Fuschman was duly qualified to operate it. Another doctor thought a person should have more experience and training to qualify as an operator. The question of the qualification of a witness to testify rests largely in the discretion of the trial court, and will not be reversed unless it clearly appears that the witness is not qualified. *Lane Bros. & Co.* v. *Bauserman*, 103 Va. 146, 155, 48 S. E. 857; *Arminius Chemical Co.* v. *Landrum*, 113 Va. 7, 21, 73 S. E. 459.

. No such showing appears here. The objections to Fuschman's testimony must be treated as merely going to the weight of his testimony rather than to its admissibility. The court, therefore, without objection, instructed the jury as to the weight to be given the findings of the "Drunk-O-Meter" test.

■ In view of the situation disclosed in the record before us, we are not called upon to express any opinion relative to the admissibility of evidence obtained by means of a chemical test to determine intoxication. In recent years that question has reached many courts with somewhat varying results and decisions, dependent upon the limitations imposed, and has been the subject of discussion by many authors. On the admissibility of evidence obtained by scientific devices and analysis, see *Lombness* v. *State*, 243 P. 2d 389, (Okla. 1952); *Toms* v. *State*, 239 P. 2d 812, (Okla. 1952); *People* v. *Morse*, 325 Mich. 270, 38

N. W. 2d 322, (1949); *People v. Bobczyk,* 343 Ill. App. 504, 99 N. E. 2d 567, (1951); *State* v. *Sturtevant,* 96 N. H. 99, 70 Atl. 2d 909, (1950); *Guenther* v. *State,* 153 Tex. Crim. App. 519, 221 S. W. 2d 780, (1949); *State* v. *Hunter,* 4. N. J. Super. 531, 68 Atl. 2d 274, (1949); Annotations 127 A. L. R. 1513 and 159 A. L. R. 209; 6 Arkansas Law Review, page 181, (1952); 39 Virginia Law Review, page 215, (1953); 35 Journal of Criminal Law and Criminology, page 202, (1944).

It will be noted that the defendant does not contend that the evidence is insufficient to justify his conviction. The burden was upon him to show prejudicial error upon his trial. This burden he has not borne.

Since we find no error on the record, the judgment of the trial court is affirmed.

*Affirmed.*