RICHARD D. TAYLOR, JR.

v.

WORRELL ENTERPRISES, INC., D/B/A THE DAILY PROGRESS

Record No. 901664

September 20, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell,* Whiting, Lacy, and Hassell, JJ.

*Roger C. Wiley, Senior Assistant Attorney General (Mary Sue Terry, Attorney General; H. Lane Kneedler, Chief Deputy Attorney General; K. Marshall Cook, Deputy Attorney General; Janice M. Sigler, Assistant Attorney General*, on briefs), for appellant.

*Alexander Wellford (Christian, Barton, Epps, Brent & Chappell*, on brief), for appellee.

---

* Justice Russell participated in the hearing and decision of this case prior to the effective date of his retirement on July 1, 1991.

JUSTICE LACY announced the judgment of the Court, and delivered an opinion in which JUSTICE COMPTON and JUSTICE RUSSELL join.

In this case we consider whether an itemized list of long distance telephone calls placed by the Governor's office must be disclosed when requested pursuant to the Freedom of Information Act, Va. Code §§ 2.1-340, *et seq.*

The special projects editor of *The Daily Progress*, a newspaper published by Worrell Enterprises, Inc. (Worrell), requested copies of the monthly billings sent by the Department of Information Technology to the Governor's office for telephone service to that office. The request, submitted under the Freedom of Information Act (the Act), sought each page detailing information about "SCATS and toll calls, long-distance and third party calls" since January 13, 1990.

The information contained on the itemized billings includes a cover sheet which lists the aggregate monthly charges for various phone services.[1] The remaining pages identify individual toll calls by the telephone number charged for the call, the city and number called, and the city and number from which the call was placed. The itemization also shows the number of minutes of each conversation and the charge for each.[2]

Richard D. Taylor, Jr., Special Assistant to the Governor and custodian of the telephone records for the Governor's office, agreed to provide Worrell with the cover sheet showing the aggregate charges. Taylor denied Worrell's request for the itemized billings for each toll call, maintaining that these records were exempt from disclosure under § 2.1-342(B)(4) of the Act as "[m]emoranda, working papers and correspondence held . . . by the office of the Governor."

Worrell filed a petition for writ of mandamus. The trial court, after considering argument of counsel, determined that the information did not come within the terms of the pertinent exception

---

[1] Although the itemized billings in issue are not part of the record, the parties have stipulated that they are in the same form as the itemized billing examples attached to Worrell's petition. The cover page shows the charges for main line, long distance, SCATS, cellular phone, data, video conferencing, message units, radio, and pager services. The current version of this page combines certain of these services, but retains separate identification of costs incurred for SCATS calls and toll calls.

[2] Calls placed on the SCATS network do not reflect the city or number called but show only the total number of minutes each originating telephone number utilized the SCATS system and the accompanying charge.

and, therefore, was subject to compelled disclosure under the Act. Subsequently, the court entered an order granting the writ on November 15, 1990. We awarded Taylor an appeal.

The Attorney General argues, *inter alia*, that the Act, as interpreted by the trial court to require mandatory disclosure of these telephone records, violates the separation of powers doctrine embodied in article I, § 5 and article III, § 1 of the Virginia Constitution.

In considering this issue, we are mindful of the presumption of validity that attaches to a statute, that requires this Court to resolve any reasonable doubt as to the statute's constitutionality in favor of its legality if possible. *Infants* v. *Virginia Hous. Dev. Auth.*, 221 Va. 659, 669, 272 S.E.2d 649, 655 (1980); *Allen* v. *The Governor*, 151 Va. 21, 24, 144 S.E. 469, 475 (1928); *Carter's Case*, 96 Va. 791, 815, 32 S.E. 780, 785 (1899).

The Virginia Constitution directs that the government function through three equal but separate branches with specific responsibilities and powers assigned to each, and that no one branch may exercise the functions or powers of another except as specifically authorized by the constitution. *Gandy* v. *Elizabeth City County*, 179 Va. 340, 346, 19 S.E.2d 97, 99 (1942); *Commonwealth* v. *Dodson*, 176 Va. 281, 305, 11 S.E.2d 120, 131 (1940). Va. Const. art. I, § 5, art. III, § 1. This principle prevents one branch from engaging in the functions of another, such as the judicial branch performing a legislative function *Bd. of Supervisors of Fairfax Co.* v. *Allman*, 215 Va. 434, 211 S.E.2d 48 (1975), *Gandy, supra*, or the legislative branch taking on powers of a judicial nature, *Fugate* v. *Weston*, 156 Va. 107, 157 S.E. 736 (1931).

In considering separation of powers issues, however, we have acknowledged that the degree of separation demanded by the Virginia Constitution is not absolute and necessarily operates within some practical limitations and exceptions. *Baliles* v. *Mazur*, 224 Va. 462, 472, 297 S.E.2d 695, 700 (1982). The legislative branch may delegate some of its powers to agencies in the executive branch if the delegation is accompanied by appropriate standards for the exercise of that authority. *Ames* v. *Town of Painter*, 239 Va. 343, 349, 389 S.E.2d 702, 705 (1990). There will also be instances where the line between the powers of two branches may be

less than clear and incidental encroachment is necessary and permitted.[3] *Fugate*, 156 Va. at 112, 157 S.E. at 737.

Nevertheless, the legislature may run afoul of the separation of powers doctrine even though it is exercising legitimate regulatory authority. In *Carter's Case*, *supra*, the legislature's authority to regulate the use of the power of contempt of court was balanced with the judiciary's inherent right to exercise that power. This Court held that legislative regulation of the contempt power was legitimate; however, it could not interfere with the courts' contempt power to the extent that the power was rendered ineffectual, or to the extent that it destroyed the "authority necessary to the exercise of the jurisdiction conferred" on the courts. *Id.* at 816, 32 S.E. at 785; *see Yoder* v. *Commonwealth*, 107 Va. 823, 829-30, 57 S.E. 581, 583-84 (1907).

Worrell argues that legislatively required disclosure of the itemized statements does not encroach on the Governor's constitutional responsibilities as Chief Executive Officer because the content of the telephone calls remains confidential. Therefore, the argument goes, the legislature did not compromise the executive's consultation and decision-making process and there is no violation of the separation of powers doctrine.

Worrell's argument incorrectly presumes that the data sought are totally devoid of substantive information. On the contrary, data which show the time and the originating and terminating location of a call is information concerning the activity of the Governor's office. The data, standing alone, could provide a basis for public speculation. The data also provide an information base for further investigation which could subject recipients of such calls to inquiries regarding the calls and their content.

More importantly, as argued by the Attorney General, compelled release of this information could have a chilling effect on the Governor's use of the telephone for conducting the Commonwealth's business. The Governor's need to confer with persons located in a different city, as well as the need to confer with his office while out of Richmond, cannot seriously be disputed. The

---

[3] Similarly, the distinction between executive privilege and separation of powers is not always clear. Executive privilege reflects the need of the executive to withhold information requested pursuant to a legitimate exercise of governmental authority. *See Nixon* v. *Administrator of Gen. Servs.*, 433 U.S. 425, 447 (1977). A violation of the separation of powers doctrine — the improper invasion by one branch of government into the province of another — is not a prerequisite for the assertion of the executive privilege doctrine.

potential chilling effect would operate not only on the Chief Executive but could also extend to individuals he might wish to consult via this communication medium. As noted by the United States Supreme Court,

> [h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision making process.

*United States* v. *Nixon*, 418 U.S. 683, 705 (1974). A lack of candor or an unwillingness to participate in the decision making process is as likely to flow from the compelled disclosure of the fact of consultation as from the disclosure of the content of the consultation. See Levi, *Some Aspects of Separation of Powers*, 76 Colum. L. Rev. 371, 388-390 (1976).

Thus, contrary to Worrell's premise, the data requested have an intrinsic significance apart from the content of the calls themselves. Compelled disclosure of that data impairs, though it does not completely destroy, the ability of the executive to perform his constitutionally required duties. The appropriate considerations for determining whether the interference is sufficient to constitute a violation of the separation of powers doctrine were succinctly articulated by the United States Supreme Court in *Nixon* v. *Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977) (citations omitted):

> [I]n determining whether the Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions . . . . Only where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress.

We have already said that compelled disclosure of the information at issue presents a "potential for disruption." We now turn to whether this potential disruption is justified by "an overriding need to promote objectives" of the legislative branch. The legislative objective here is not one of providing a means for conducting an investigation or prosecution of the executive branch for alleged

misconduct. Rather, the legislative objective is to encourage and facilitate a policy of openness in government. We must determine, then, if this policy justifies the disruption attendant to the compelled disclosure of the information at issue.

The General Assembly's implementation of an open government policy is realized by the Act itself. The General Assembly sought to ensure public access to governmental records and meetings, to avoid an "atmosphere of secrecy" in the conduct of government affairs, and to encourage resolution of disputes in these areas through agreement rather than litigation. § 2.1-340.1. The General Assembly does not consider the policy absolute, however, and currently has identified 44 instances in which certain information is exempt from mandatory disclosure. Taken together, these exemptions reflect the General Assembly's determination that the policy of openness does not override the need for confidentiality in every circumstance, that the best interests of the Commonwealth may require that certain governmental records and activities not be subject to compelled disclosure. Furthermore, the parties agree that the exemption in issue reflected the General Assembly's recognition of "constitutional limits on its ability to invade the confidentiality of the Governor's communications."

Thus, we cannot say that the potential for disruption imposed on the Governor in executing the duties of Chief Executive Officer is outweighed by the application of the open government policy in this instance. Consequently, a legislatively imposed disclosure requirement would constitute a violation of the separation of powers doctrine because disclosure of the information in question would unduly interfere with the Chief Executive Officer's ability to perform his duties, and is not warranted by an overriding need to promote a policy of open government in this instance.

Viewing the Act as a whole, and presuming that the General Assembly acted within constitutional parameters, we conclude that the General Assembly intended to exclude from mandatory disclosure information which, if required to be released, would unconstitutionally interfere with the ability of the Governor to execute the duties of his office. Therefore, the information at issue here must fall within the § 2.1-342(B)(4) exemption and is not subject to compelled disclosure under the Act.

Accordingly, we will reverse the judgment of the trial court and dismiss the petition for writ of mandamus.

*Reversed and dismissed.*

CHIEF JUSTICE CARRICO, concurring in the result.

I do not think that Taylor's assignment of error properly raises for appellate review the issues relating to separation of powers and executive privilege. Hence, I cannot agree with the rationale employed by Justice Lacy in declaring that the Governor's monthly billings for telephone service are exempt from disclosure because "a legislatively imposed disclosure requirement would constitute a violation of the separation of powers doctrine."

I do concur, however, in the result Justice Lacy reaches. I think that under the rule requiring the courts to give statutory language its "plain meaning," *School Board* v. *State Board of Education*, 219 Va. 244, 250, 247 S.E.2d 380, 384 (1978), the monthly billings at issue here are "[m]emoranda . . . held . . . by the office of the Governor" and thus exempt from disclosure under Code § 2.1-342(B)(4). Accordingly, I agree that the judgment of the trial court should be reversed and the petition for writ of mandamus dismissed.

JUSTICE HASSELL, with whom JUSTICE STEPHENSON and JUSTICE WHITING join, dissenting.

This Court has an obligation to apply its procedural rules impartially and uniformly to all litigants. Uniform application of procedural rules, regardless of the status of the litigant who appears before the bar of this Court, is an indispensable component of justice. I dissent because the plurality ignores this Court's procedural rules and precedent and decides a constitutional issue that a majority of the Justices of this Court believe is not properly before this Court.* Furthermore, the words of Mr. Justice Oliver Holmes are most instructive here:

> Great cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in

---

* Chief Justice Carrico and Justices Stephenson, Whiting and Hassell do not believe that the constitutional issue was preserved by proper assignment of error.

shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend.

*Northern Securities Co.* v. *United States*, 193 U.S. 197, 400 (1903) (Holmes, J., dissenting).

The plurality opinion holds that the trial court's application of Code § 2.1-342(B)(4) would place the General Assembly in violation of the separation of powers doctrine contained in Article I, § 5 of the Constitution of Virginia. The plurality should not have considered this issue because Taylor failed to raise this issue by proper assignment of error. Taylor's sole assignment of error states:

> The trial court erred in concluding that the itemized long-distance telephone bills of the Governor's office are not '[m]emoranda, working papers [or] correspondence held or requested by' that office, exempt from public disclosure under § 2.1-342(B)(4).

Likewise, Taylor's Question Presented states:

> Did the General Assembly intend itemized long-distance telephone bills of the Governor's office, showing the date, time, place and telephone number called from each extension in the office, to be subject to disclosure under the Act, or are such records protected from disclosure pursuant to § 2.1-342(B)(4) of the Act, which exempts '[m]emoranda, working papers and correspondence held or requested by' the Governor's office?

Rule 5:17(c) of our Rules states, in part:

> The petition for appeal shall contain assignments of error . . . . Only errors assigned in the petition for appeal will be noticed by this Court.

Litigants are required to identify with some degree of specificity the error committed by the trial court. We have adhered to this mandatory rule with good reason.

> The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points. Without such assignments, appellee would be unable to prepare an effective brief in opposition to the granting of an appeal, to determine the material portions of the record to designate for printing, to assure himself of the correctness of the record while it is in the clerk's office, or to file, in civil cases, assignments of cross-error.

*Harlow* v. *Commonwealth*, 195 Va. 269, 271-72, 77 S.E.2d 851, 853 (1953).

Stated differently, the requirement for the assignment of error enables this Court and counsel to determine the precise issues upon which petitioner's counsel relies in seeking a reversal of the judgment or decree of the trial court and to limit the discussions on appeal to those issues. *Harlow, supra; Omohundro* v. *County of Arlington*, 194 Va. 773, 778, 75 S.E.2d 496, 499 (1953); *Hall* v. *Hall*, 192 Va. 721, 725-26, 66 S.E.2d 595, 598 (1951); *Avery* v. *County School Board*, 192 Va. 329, 332, 64 S.E.2d 767, 769 (1951); *Skeens* v. *Commonwealth*, 192 Va. 200, 204, 64 S.E.2d 764, 766 (1951); *Puckett* v. *Commonwealth*, 134 Va. 574, 579, 113 S.E. 853, 854 (1922); *Belmont* v. *McAllister*, 116 Va. 285, 290, 81 S.E. 81, 83 (1914); *see also Norfolk & Western Railroad Co.* v. *Bondurant*, 107 Va. 515, 526, 59 S.E. 1091, 1095 (1907); *First Nat. Bank of Richmond* v. *William R. Trigg Co.*, 106 Va. 327, 56 S.E. 158 (1907), *writ of error dismissed*, 218 U.S. 693 (1910). As we stated in *Trigg Co.*, 106 Va. at 342, 56 S.E. at 163, counsel must "lay his finger on the error" and, as we added in *Loughran* v. *Kincheloe*, 160 Va. 292, 298, 168 S.E. 362, 364 (1933), we must decline invitations to "delve into the record and winnow the chaff from the wheat."

We have consistently declined to consider issues raised on appeal which were not properly preserved by the assignment of error. For example, in *Infant C.* v. *Boy Scouts of America*, 239 Va. 572, 579 n.1, 391 S.E.2d 322, 326 n.1 (1990), we refused to con-

sider an appellant's contention on appeal that the trial court should have resolved an issue of agency as a matter of law because error was not assigned to the court's submission of that issue to the jury. Likewise, in *Glens Falls Insurance Company* v. *Stephenson*, 235 Va. 420, 423 n.3, 367 S.E.2d 722, 724 n.3 (1988), we refused to consider whether an alleged breach of an insurance contract had occurred because the appellant did not assign error to the trial court's failure to find that the appellee's breach avoided insurance coverage.

In *Philip Morris Inc.* v. *Emerson*, 235 Va. 380, 412, 368 S.E.2d 268, 285-86 (1988), we refused to consider an assignment of error because the assignment of error did not identify the alleged error with the required reasonable certainty. Philip Morris assigned as error that "the court erred in ruling as a matter of law that Philip Morris was actively negligent and was therefore not permitted to recover indemnification from Texaco, A-Line and Environmental." *Id.* at 412, 368 S.E.2d at 285. The trial court held:

> The contractual indemnity claim of Philip Morris against A-Line and Environmental fails for lack of specificity in their written agreements . . . . The language in the contracts between Philip Morris and A-Line and Environmental lack such specific language and accordingly cannot properly be construed to impose a requirement of indemnification upon A-Line and Environmental for the negligence of Philip Morris.

*Id.* We held that Philip Morris' assignment of error did not refer to any allegedly erroneous ruling of the trial court in construing the contract, but rather Philip Morris' complaint was of an erroneous holding that it could not recover indemnification because it was actively negligent as a matter of law. *Id.* at 412, 368 S.E.2d at 285-86. In *Quintana* v. *Commonwealth*, 224 Va. 127, 134 n.1, 295 S.E.2d 643, 645 n.1 (1982), *cert. denied*, 460 U.S. 1029 (1983), *rehearing denied*, 461 U.S. 940 (1983), an appeal from a capital murder conviction, we refused to consider an issue argued on brief because it was neither properly preserved in the trial court nor raised by an assignment of error in this Court.

An examination of the record in this case reveals that Taylor's separation of powers and executive privilege arguments were not seriously pursued by Taylor in the trial court or properly raised by

assignment of error. The only responsive pleading that Taylor filed in the trial court was a motion to dismiss. The motion does not contain any allegations which relate to separation of powers or executive privilege. This case was litigated in the trial court solely on the basis of whether the exemption in Code § 2.1-342(B)(4) was applicable, as evidenced by statements Taylor's counsel made to the trial court:

> Your Honor, I am Roger Wiley, and I am appearing on behalf of Richard Taylor, special assistant to the Governor, who is the named defendant in this case and we have stipulated that he is, in fact, the custodian of the records that are being sought.
> As Mr. Kohler [appellee's counsel] has told the court, the sole issue in the case is whether these itemized telephone bill listings come within the exception in the Freedom of Information Act for memoranda, correspondence, and working papers of the Governor's office.

The trial court's final order did not decide any issues relating to separation of powers or executive privilege. Taylor's counsel did not request the court to include a ruling on these issues in the final order. Taylor did not object to the entry of the final order on the basis that the order failed to address the separation of powers and executive privilege issues. Taylor concedes in his brief filed with this Court that "[b]oth parties agree that if the § 2.1-342(B)(4) exemption does not apply, the records must be produced and, conversely, that if it does apply, the Governor's office (acting through Taylor) may refuse to produce the itemized bills."

It is true that counsel for Taylor alluded to the separation of powers issue in three paragraphs of a nine-page trial memorandum. That issue, however, had not been raised by responsive pleading and was never seriously pursued by Taylor's counsel. Indeed, during oral argument in the trial court his only comment on the subject was, "I think the separation of powers does come into play at some point." Significantly, the trial memorandum completely fails to mention any argument about executive privilege.

The plurality, without explanation, ignores established precedent and reaches a constitutional question that is not properly before this Court.

The Virginia Freedom of Information Act was enacted by the Virginia General Assembly in 1968. The policy underlying the Act is set forth in Code § 2.1-340.1A:

It is the purpose of the General Assembly by providing this chapter to ensure to the people of this Commonwealth ready access to records in the custody of public officials and free entry to meetings of public bodies wherein the business of the people is being conducted. This chapter recognizes that the affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government. To the end that the purposes of this chapter may be realized, it shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. *Any exception or exemption from applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person.*

(emphasis added). We have consistently held that the Act shall be liberally construed to enable citizens to observe the operations of government and that exemptions shall be narrowly construed. *City of Danville* v. *Laird*, 223 Va. 271, 276, 288 S.E.2d 429, 431 (1982); *Marsh* v. *Richmond Newspapers, Inc.*, 223 Va. 245, 255, 288 S.E.2d 415, 420 (1982). In 1989, the General Assembly amended the Act and thus codified our previous holdings that the Act shall be liberally construed.

This chapter shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption from applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person.

Code § 2.1-340.1B.

The Freedom of Information Act contains numerous exemptions. Included are those defined in Code § 2.1-342(B)(4) which states, in part:

The following records are excluded from the provisions of this chapter:

(4) Memoranda, working papers and correspondence held or requested by . . . the office of the Governor.

Memorandum is defined as:

An informal record, note or instrument embodying something that the parties desire to fix in memory by the aid of written evidence, or that is to serve as the basis of a future formal contract or deed. A brief written statement outlining the terms of an agreement or transaction. Informal interoffice communication.

*Black's Law Dictionary* 984 (6th ed. 1990). Because we must narrowly construe the exemption and liberally construe the Act to enable citizens to observe the operations of government, I would hold that the telephone bills do not constitute memoranda.

The General Assembly has acquiesced in this narrow definition of memorandum as used in the exemption contained in Code § 2.1-342(B)(4). In 1976, the Attorney General of Virginia was asked by a member of the General Assembly to opine whether the disclosure of records of telephone calls charged to the Commonwealth on credit cards issued to members of the General Assembly are exempt from disclosure because of Code § 2.1-342(B)(4). The telephone records specified the telephone number to which charges were made, the date the telephone call was placed, the place called, including the telephone number and place from which the call was made, the telephone number called, and the charges for each call. The Attorney General concluded:

In considering the applicability of this specific exception I am governed by the provisions of § 2.1-340.1 which provides, in pertinent part, as follows:

'. . . To the end that the purposes of this chapter may be realized, it shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption from applicability [of the Act]

shall be narrowly construed in order that no thing
which should be public may be hidden from any
person.'

Construing § 2.1-342(B)(4) pursuant to this direction, I can-
not conclude that the telephone records fall within the pur-
view of memoranda, working papers or correspondence held
by legislative members. Indeed, I find no exemption from the
Act which would be applicable. I am, therefore, of the opin-
ion that the records in question are not exempt from disclo-
sure under the provisions of the Virginia Freedom of Infor-
mation Act.

Op. Att'y Gen. 311-12 (1976-77).
I quote this opinion of the Attorney General not as controlling
authority but rather *solely* as an aid in ascertaining whether the
General Assembly acquiesced in this opinion.

Without question, the General Assembly was well aware that
the Attorney General had opined that itemized telephone bills do
not fall within the scope of the exemption contained in Code
§ 2.1-342(B)(4). Even though the General Assembly has been
aware of the Attorney General's interpretation for 15 years, it has
taken no action to correct or change that interpretation.

We have repeatedly held, without exception, that the legislature
is presumed to have knowledge of the Attorney General's interpre-
tation of statutes and that the General Assembly's failure to make
corrective amendments evinces legislative acquiescence in the At-
torney General's interpretation. *Browning-Ferris* v. *Common-
wealth*, 225 Va. 157, 161, 300 S.E.2d 603, 605-06 (1983); *Deal* v.
*Commonwealth*, 224 Va. 618, 622, 299 S.E.2d 346, 348 (1983);
*see Albemarle County* v. *Marshall, Clerk*, 215 Va. 756, 762, 214
S.E.2d 146, 150 (1975) (acquiescence for period of seven years).

The plurality, in its opinion, does not discuss whether the Gov-
ernor's telephone bills constitute memoranda and are, thus, ex-
empt from disclosure. However, this Court does not decide consti-
tutional issues if an appeal can be adjudicated on a statutory or
common law basis. "One of the most firmly established doctrines
in the field of constitutional law is that a court will pass upon the
constitutionality of a statute only when it is necessary to the deter-
mination of the merits of the case." *Bissell* v. *Commonwealth*,
199 Va. 397, 400, 100 S.E.2d 1, 3 (1957) (citations omitted).

Thus, applying this fundamental precept, even the plurality must agree that the Governor's telephone bills do not constitute memoranda and that the exemption is not applicable.

The concurring opinion erroneously concludes that the telephone bills constitute memoranda and, thus, are exempt from disclosure by Code § 2.1-342(B)(4). The concurrence, just as the plurality, ignores this Court's established precedent. Just as significant, the concurrence does not explain why it chose to ignore this Court's prior decisions. For example, the concurring opinion ignores our decisions which require that we liberally construe the Act and narrowly construe exceptions to the Act. The concurring opinion ignores the plain language of the Act which requires that this Court narrowly construe the exemptions contained in the Act. Finally, the concurrence ignores established precedent related to our principles regarding legislative acquiescence in opinions of the Attorney General.

Unlike the plurality and the concurrence, I believe that this Court is required to follow its established precedent until such precedent is overruled. Accordingly, I would affirm the judgment of the trial court.