# CRIMINAL CASES.

## Wytheville.

### YODER v. COMMONWEALTH.

### June 13, 1907.

1. CONTEMPT—*Summary Punishment—Code* (1904), *Sec.* 3768.—The power given to courts and judges by Section 3768 of the Code (1904) to punish "summarily" for contempt is a power to punish without the intervention of a jury, and is limited to the classes of contempt set forth in that section.

2. CONTEMPT—*Regulation—Constitutional Provision.*—The constitutional provision that the General Assembly "may regulate the exercise by courts of the right to punish for contempt" was not intended to clothe the legislature with absolute power over the subject, but meant to confer upon the legislature authority to bring the subject of contempts within reasonable regulations, not inconsistent with the exercise by the courts, with .vigor and efficiency, of those functions which are essential to the discharge of their duties. Courts still have the power of self preservation and self protection.

3. CONTEMPTS—*Regulation—Code* (1904), *Sec.* 3768 *Constitutional.*—The present statute on the subject of contempts, as contained in Section 3768 of Code 1904, enlarges the classes of cases in which there may be summary punishment, and is a reasonable regulation of the exercise by the courts of the power to punish for contempt. It does not so far abridge or impair the powers of the courts established by the constitution, nor so far diminish their authority, and is not a regulation so unreasonable, as to render them incapable of the efficient exercise of their functions, and hence is constitutional.

4. CONTEMPT—*Code* (1904) *Sec.* 3768—*Publication of Insulting Language Concerning Judge.*—The publication in a newspaper of insulting language concerning a judge with respect to any proceeding had in his court cannot be said to be "insulting language *addressed* to the judge," and is not within the classes of contempts enumerated in Section 3768 of Code 1904, for which summary punishment may

be administered by a court or judge; nor is the failure to provide by that section for the summary punishment of such offenses so unreasonable, nor does it so far abridge, diminish and impair the vigor and efficiency of the courts as to render the section unconstitutional.

5. CONTEMPT—*Punishment—Code* (1904), *Sec.* 3771.—The limitation of the duration of the imprisonment for contempt imposed by Section 3771 of the Code applies only to contempts mentioned in the first class of Section 3768, and not to those mentioned in the remaining four classes of that section.

Error to a judgment of the Corporation Court of the city of Lynchburg in a proceeding for contempt.

*Reversed.*

The opinion states the case.

*Montague & Montague* and *A. E. Strode,* for the plaintiff in error.

*Attorney-General William A. Anderson* and *J. T. Coleman,* for the commonwealth.

KEITH, P., delivered the opinion of the court.

A rule was issued by the corporation court of the city of Lynchburg, at its October term, 1906, against Adon A. Yoder, to show cause why he should not be fined for his alleged contempt of court, "in that he did on the . . . . . . . . . day of August, on the . . . . . . . . day of September, and on the . . . . . . . . day of October, 1906, within the city of Lynchburg, write, publish and circulate in ·a certain publication entitled 'The Idea,' certain articles of and concerning the Honorable Frank P. Christian, judge of the corporation court of the said city." The rule referred to in the foregoing order is in the words and figures following, to-wit:

"We command you that you summon Adon A. Yoder to appear before the judge of our corporation court for the city of Lynchburg at the court-house thereof, on Friday, the 26th day of October, 1906, at 10 o'clock A. M., to show cause, if any he can, why he should not be attached and fined for his contempt of said court in that he did on the ........ day of August, 1906, within the said city, write, publish and circulate in a certain publication entitled 'The Idea,' the following language of and concerning the Honorable Frank P. Christian, judge of the corporation court aforesaid: ·

" 'Perhaps the most travelled spot in Lynchburg is the intersection of Twelfth and Main streets, and yet the four corners at this intersection are occupied by bar-rooms. Now, if there be anybody that thinks that this is "suitable and appropriate," let him stand on his head, for I just want to see what he looks like; yet Judge Christian, who grants these licenses, must according to law be "fully satisfied that the place is a suitable and appropriate" one. Now I think that the time has come that we were having a judge who has a sufficient appreciation of the value to the community of the morality of its young men and of the virtue and sense of decency of its young women to keep such a vile thing as a bar-room, certainly, at least, off from the most public spot in the main business street of the town. But Judge Christian has been a judge so long that he has got sot in his ways. He always was a judge of · good liquor and now as a judge of the corporation court he has to carry his past sense of "appropriateness" with him.'

"And, also, on the ...... day of September, the following language:

" 'So many KICKS have come to our notice in the last few weeks that we hardly know where to begin. Many of them will have to be passed over for the present until we are able to get a few figures to help substantiate the facts. You see, at present, the editor is advertising agent, reporter, editor, super-

intendent of printing and business manager, and even on occasion newsboy as well. So if we do not let them have it hot enough for you just be patient, for a kick can be made much more effective by getting all data possible before writing.

" 'For instance, in the August number we had something to say about Judge Christian's granting license to certain barrooms on the corner of Twelfth and Main. We have since found out some reasons why the long-faced judge cannot afford to make that spot fit for ladies or gentlemen to pass. The judge is interested in the ownership of one of those rough and tough places, and, therefore, he couldn't refuse to license one without hurting himself. See the point? Besides this, there is another bar-room in town, the rents of which help to fill his coffers. And yet such a man is judge of the corporation court of Lynchburg!

" 'I am not making an argument for any man who is so degraded a fool as to make any kind of a serious argument for the existence of the saloons. Your conscience, if you have any, condemns you enough. I want you to know that now is the time to let Christian and his like know that you are disgusted with his actions, which are causing the enormous expenditure of the city's money for police and criminal expenses.'

"And also, on the .... day of October, 1906, the following language:

" 'Read elsewhere in this number what Sam Jones said about Mayor Smith. Also read what he said about Judge Christian, the church steward, who rents out two or three bar-rooms. Judge Christian knows how unchristian it is, but you see he can get so much more money from bar-keepers than he can from other renters. Yet Judge Christian makes threats every now and then against the bar-keepers for keeping disorderly houses, but they know that his threats are not loaded, for he can't afford to refuse licenses to others when he grants them to his own tenants. You understand?

" 'Maybe some day we will tell you how this little man came to be judge.'

"And have then and there this writ."

Yoder appeared in obedience to this rule and filed his answer, from which it appears that he did make the publications as charged in the rule, but he excuses or defends the act upon the ground that it does not constitute a contempt of court, punishable under section 3768 of the Code, which provides, that "The courts and judges may issue attachments for contempt, and punish them summarily, only in the cases following:

"First. Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice.

"Second. Violence, or threats of violence, to a judge or officer of the court, or to a juror, witness, or party going to, attending, or returning from the court, for or in respect of any act or proceeding had or to be had in such court.

"Third. Obscene, 'contemptuous or insulting language addressed to a judge for or in respect of any act, or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing for or in respect of such act or proceeding.

"Fourth. Misbehavior of an officer of the court in his official character.

"Fifth. Disobedience or resistance of an officer of the court, juror, witness, or other person to any lawful process, judgment, decree or order of the said court."

In construing this section, we must first ascertain just what the legislature meant when it said that "The courts and judges may issue attachments for contempt and punish them summarily only in the cases following."

At common law, the general rule was, that no person could · be deprived of his property or his liberty except by the judgment of his peers. To this rule, however, there was an ex-

ception, and in cases of contempt the offender could be attached, brought at once before the court and punished without the intervention of a jury. Other exceptions relating to minor offenses are enumerated by Blackstone (4 Com. 280) which need not here be specifically mentioned.

In Bouvier's Dict.; Vol. 2, under the head of "Summary Proceeding," it is said: "In no case can the party be tried summarily unless when such proceedings are authorized by legislative authority, except perhaps in cases of contempts; for the common law is a stranger to such a mode of trial. 4 Bl. Com. 280; 2 Kent 73."

And in *Jones v. Robins,* 8 Gray 329, it is said, that summary proceeding is a form of trial in which the ancient established course of legal proceedings is disregarded, especially in the matter of trial by jury, and, in the case of the heavier crimes, presentment by a grand jury. *Brown* v. *Epps,* 91 Va. .726.

Looking then to section 3768 and the other sections *in pari materia,* and especially section 3771, the conclusion cannot be resisted that the legislature had it in mind that a summary proceeding was one in which the party offending was not to be given a trial by jury, and it was deemed wise to limit the classes of contempts which could thus be tried in the manner provided by the succeeding clause of section 3768.

We shall now examine this section with a view to ascertaining whether or not in its adoption the legislature exceeded the limits imposed by the constitution upon its power, and, secondly, whether or not the offense of which plaintiff in error was found guilty was such as could be, within the terms of the statute, summarily punished; that is to say, without the intervention of a jury.

The subject of contempts was fully considered by this court in the case of *Carter* v. *Com'th,* 96 Va. 791, and the conclusion was reached, that "there is an inherent power of self-defence

and self-preservation in the courts of this state created by the constitution. This power may be regulated by the legislature, but cannot be destroyed or so far diminished as to be rendered ineffectual. It is a power necessarily resident in and to be exercised by the court itself, and the legislature cannot deprive such courts of the power to summarily punish for contempts by providing for a jury trial in such case."

Since the decision in that case, the constitution has been amended, and section 63 of that instrument provides, among other grants of power to the General Assembly, that it "may regulate the exercise by courts of the right to punish for contempt." The word "regulate" is here used in the same sense that was given to it in the *Carter Case, supra.* The constitution did not intend, we think, to clothe the legislature with absolute power over the subject, but meant to confer upon the legislature authority to bring the subject of contempts within reasonable regulations, not inconsistent with the exercise by the courts, with vigor and efficiency, of those functions which are essential to the discharge of their duties. When the constitution intended to confer plenary power over a subject, it provided with respect to local option and dispensary laws, in section 62, that the General Assembly "shall have full power to enact local option or dispensary laws, or any other laws controlling, regulating or prohibiting the manufacture or sale of intoxicating liquors." If the constitution had intended, by the use of the word "regulate" in section 63, to confer unrestrained authority upon the legislature to deal with the subject of contempts, it would not have been necessary in section 62 to add the words "controlling" and "prohibiting" with respect to the manufacture or sale of intoxicating liquors, but it would have been sufficient to have said that they might be regulated by the general assembly. In other words, we are of opinion that the decision in the case of *Carter* v. *Com'th* would have been a sound

exposition of the law under the present constitution as well as under that of 1869.

The act of 1897-8, which was under review in *Carter's Case,* is different from that now found in the Code of 1904, under which this case arose. The present law contains a new subdivision, or class, as it is called, as follows: "Third. Obscene, contemptuous or insulting language addressed to a judge for or in respect of any act, or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing, for or in respect of such act or proceeding."

"Fifth. Disobedience or resistence of an officer of the court, juror, witness, or other person to any lawful process, judgment, decree, or order of the said court."

Comparing this fifth clause with the fourth clause as it appears in the act of 1897-8, it will be observed that the words "other person" are introduced after the word "witness," so that under the present act the disobedience or resistance, not only of an officer, juror or witness, is punishable summarily by the court, but all other persons are embraced, which is an essential addition to the vigor and efficiency of the law.

We cannot say of the present law that it so far deprives the courts of the power of self-defense and self-preservation with respect to contempts, or so far diminishes their power to enforce their judgments, as to render them incapable of the efficient discharge of the duties committed to their care. Upon that ground this court rested its judgment in the *Carter case* and held the act then under consideration to be such an invasion of the authority of the courts as to require them in the discharge of their duties in order to preserve their powers unimpaired as confided to them by the constitution then in force, to declare that act null and void. Taking section 3768 as it stands, we are of opinion that on the whole it is a reasonable regulation of the exercise by the courts of the power to punish for contempt. It may at least be said that it does not so far

abridge or impair the powers of the courts established by the constitution, that it does not so far diminish their authority, and that it is not a regulation so unreasonable as to render them incapable of the efficient exercise of their functions.

The question becomes then one as to the construction of the statute. It is obvious that if the offense charged be covered by the statute it must be embraced within the third class, as obscene, contemptuous or insulting language addressed to a judge.

That the language used is insulting, is beyond question; and that it was wholly without justification is equally true. The judge to whom it refers has no need of any defense from us. That he was elected to preside over a court of unlimited civil and criminal jurisdiction in the city of Lynchburg, that he has been re-elected to that position by the General Assembly of this state, would seem to furnish abundant evidence to refute the charges made or insinuated against him. Indeed, the charges themselves are but the incoherent utterances of a partisan of the cause of prohibition against a judge who issued licenses to sell intoxicating liquors at a place in a large city which did not meet the approval of plaintiff in error, and the *gravamen* of the attack upon the judge is, that he held as trustee the bare legal title to the premises occupied by one of the applicants to whom he granted a license.

The defamatory articles mentioned in the rule were printed in a newspaper of which plaintiff in error was owner and publisher; and the question is, whether or not an article so published in an impersonal way can be considered as "addressed to" the judge "for or in respect of any act or proceeding had, or to be had, in such court."

Looking to the mischief to which the remedy was to be applied, it would seem to require the court to give a meaning to these words which would embrace the publication under consideration, and would make the act apply to any obscene, contemptuous, or insulting language, written or spoken of or con-

cerning a judge with respect to any act or proceeding had or to be had in his court; but it is doubtful whether the phrase adopted by the general assembly is susceptible of that interpretation.

Webster's Dictionary defines the verb "To address" to mean "To direct, as words (to any one or any thing); to make, as a speech, petition, etc. (to any one, an audience). To direct speech to; to make a communication to, whether spoken or written; to apply to by words, as by a speech, petition, etc.; to speak to; to accost. To direct in writing, as a letter; to superscribe or to direct and transmit; as, he addressed a letter."

The argument in favor of the narrow interpretation gains force from the subsequent language of the clause, "Or like language used in his presence and intended for his hearing, for or in respect of such act or proceeding."

Upon the whole, we are of opinion that the words are to be taken as meaning that the language, whether spoken or written, was to be specifically addressed to the judge. This conclusion does not fully supply a remedy for the mischief, we admit. It still leaves a judge, however innocent, at the mercy of slander and libel, however false and however calculated to degrade the court and to bring it into disrepute and contempt. But we cannot say that the omission in the act regulating contempts to provide for the punishment of such offences is so unreasonable, or so far abridges, diminishes and impairs the vigor and efficiency of the courts, as to render it unconstitutional; and we repeat that nothing short of that result would justify this court in holding this statute to be unconstitutional.

It was argued, among other things, that the judge of the corporation court could not have proceeded under section 3768, because his judgment sentences plaintiff in error to confinement for fifteen days, while under section 3771 the court was limited to the imposition of a fine of $50 and imprisonment not more than ten days; but this is obviously incorrect. Section 3771

provides that "No court shall, without a jury, for any such contempt as is mentioned in the first class embraced in section thirty-seven hundred and sixty-eight, impose a fine exceeding fifty dollars, or imprison more than ten days." The first class is, "Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice." But the limitation of section 3771 does not apply to the second, third, fourth and fifth classes into which section 3768 is divided. We have little doubt, however, that the judgment of the corporation court was rendered upon the theory that none of the subdivisions of section 3768 were applicable to this offense, and that the court proceeded under the general power to punish for contempt, being of opinion that the legislature had exceeded its authority in providing that the courts and judges could issue attachments for contempts and punish them summarily only in the cases stated in section 3768.

We are of opinion that the judgment of the corporation court should be reversed.

*Reversed.*