## CIRCUIT COURT OF ROCKINGHAM COUNTY

In re Rick Allen Bridges

Case No. CH04-J0041

In re Clifton Simmons

Case No. CH04-J0042

July 30, 2004

BY JUDGE JOHN J. MCGRATH, JR.

In both of these cases, the respondents had child support obligations for two or more children who were in the custody of different mothers or grandparents. When arrearage payments were made to purge a civil contempt, the Juvenile Court directed that payment go only to the parent or guardian for the child who had brought the contempt proceeding. These two appeals, therefore, present identical legal issues: May a Court override the statutory language of Va. Code § 63.2-1954 requiring that the Department of Child Support Enforcement prorate arrearage payments among obligees?

*Facts*

In the *Bridges* case, Rick Allen Bridges is obligated by order of the Rockingham County Juvenile and Domestic Relations District Court entered October 12, 2001, to pay the sum of $300.00 per month for the support and care of his two minor children, namely Richard A. Bridges, II (DOB: 10/15/88) and Cody E. Bridges (DOB: 7/29/92). Of this amount, $150.00 per month is currently due and owing to Lisa Faye Mitchell (mother) for the support of Cody (DCSE Case No. 2685711) and $150.00 per month is due and owing unto Edwin Mitchell (grandfather) for the care of the minor child Richard (DCSE Case No. 2893663). Both child support cases are active Division of Child Support Enforcement cases with payments payable through the Division.

On or about August 19, 2003, Mrs. Mitchell filed a civil show cause motion against Bridges for his failure to pay child support in compliance with the order of the juvenile court, with an alleged arrearage of $1,607.82 being owed to her as legal custodian of the child Cody. When Mrs. Mitchell's show cause motion was heard by the juvenile court on April 26, 2004, Mr. Bridges owed a child support arrearage of $12,215.45 as of April 1, 2004, with $2,899.54 owed to her for the support of Cody Bridges, with the arrears balance of $9,315.91 owed to Edwin Mitchell for the support of Richard A. Bridges, II. The juvenile court entered an order finding Bridges to be in contempt and ordered him incarcerated for a period not to exceed nine months, but that he could purge himself of contempt and immediately be released from jail upon the payment of $2,899.54 to the Division. This order of the Juvenile and Domestic Relations District Court ordered the Division to apply the entire purge amount solely to Mrs. Mitchell's case. From this order, the Division appealed.

In the *Simmons* case, Clifton E. Simmons is obligated by order of the Rockingham County Juvenile and Domestic Relations District Court to pay the sum of $77.65 per week as current ongoing child support to Tina D. Fox for the support and care of Stephanie D. McWilliams, minor child, born January 31, 1995. Mr. Simmons is also obligated to pay child support on a second non-related child support case pursuant to an administrative support order entered March 31, 2003, which order requires him to pay ongoing child support in the amount of $196.00 per month for the support of two children by a different mother. Both child support cases are active Division of Child Support Enforcement cases with payments payable through the Division.

On February 9, 2004, the custodial parent, Tina Fox, filed a civil show cause motion against Simmons for his failure to pay child support in compliance with the order of the juvenile court, Mr. Simmons having made only a partial payment towards January's monthly support obligation and nothing toward February's monthly support obligation. (Mr. Simmons's payment history on his other support case is identical to that of Mrs. Fox's case for the period of January and February 2004.) Beginning in March 2004, regular and timely payments resumed and continue to be received on both cases.

When Mrs. Fox's show cause motion was heard by the juvenile court on April 26, 2004, Mr. Simmons owed her an accumulated arrears debt of $503.59 as of April 5, 2004. (On Simmons's companion case, he owed an accumulated arrears debt of $767.13 as of April 5, 2004.) The juvenile court entered an order on April 26, 2004, finding Simmons to be in contempt and ordered him incarcerated for a period not to exceed sixty days, but ordered that he could purge himself of contempt and be immediately released from jail

upon the payment of $503.59 to the Division. This order made no reference to allocating the entire payment solely to Mrs. Fox's case. The Division, in accordance with the provisions of Virginia Code § 63.2-1954, prorated the payment, with $268.76 being applied to this case and the remaining balance of $236.34 being applied to Mr. Simmons's companion case. Subsequent to entry of the order of the juvenile court on April 26, 2004, and subsequent to the proration of the payment, Mrs. Fox contacted the juvenile court on April 29, 2004, and the juvenile court on April 30, 2004, unilaterally amended its order of the 26th to require that the entire sum of $503.59 be applied solely to Mrs. Fox's case. From this order of the Juvenile and Domestic Relations District Court requiring that the payment be allocated or applied solely to this case, the Division noted an appeal to this court.

### Legal Analysis

The ultimate question presented by these cases is whether the Juvenile and Domestic Relations District Court's contempt power permits it to override the statutory mandate of § 63.2-1954 of the Code of Virginia, 1950, as amended, to the Division, providing that "payments received by Department or Department's designee *shall be prorated* among the obligees ... in the same proration as the current support payments." (Emphasis added.)

In the final analysis, the question of whether a court may use its contempt power to make an administrative agency allocate funds in a fashion which contradicts a statutory mandate is determined by the long standing and constitutionally premised doctrine of the separation of powers.

In interpreting the separation of powers doctrine expressed in both Section 5 of Article 1 and Section 1 of Article 3 of the Virginia Constitution, the court recognizes that our Commonwealth's Constitution declares that "the legislative, executive, and judiciary departments are to be forever separate and distinct." [1] In *Taylor v. Worrell Enters. Inc.*, 242 Va. 219, 409 S.E.2d 126 (1991), the Virginia Supreme Court analyzed whether the separation of powers doctrine had been violated. In *Taylor*, a newspaper employee made a Freedom of Information (FOIA) request for the Governor's monthly telephone bills. When the Governor refused to comply, the newspaper sought a writ of mandamus to force his compliance. The Virginia Supreme Court recognized that "the degree of separation is not absolute and necessarily operates within

---

[1] Va. Const., Art. 1, § 5 (1971) states: AThat the legislative, executive, and judicial departments of the Commonwealth should be separate and distinct. . . .≅ Va. Const., Art. 3, § 1 (1971) states: AThe legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time. . . .≅

some practical limitations and exceptions." *Id.* at 221, 409 S.E.2d at 138, citing *Baliles v. Mazur*, 224 Va. 462, 297 S.E.2d 695 (1982). It further recognized that "there will also be instances where the line between the powers of two branches may be less than clear and incidental encroachment is necessary and permitted." *Id.* at 222, 409 S.E.2d at 138, citing *Fugate v. Weston*, 156 Va. 107, 157 S.E. 736 (1931). Relying on the analysis used in both *Carter v. Commonwealth*, 96 Va. 791, 32 S.E. 780 (1899), and *Yoder v. Commonwealth*, 107 Va. 823, 57 S.E. 581 (1907), the Virginia Supreme Court balanced the extent to which FOIA laws prevented the executive branch from accomplishing its constitutionally assigned functions, on the one hand, against the General Assembly's objective to provide an open government policy, on the other.[2] The Virginia Supreme Court noted that by creating forty-four FOIA exemptions to mandatory disclosure, the General Assembly recognized that in some circumstances, the policy of openness does not override confidentiality. It held:

> Thus, we cannot say that the potential for disruption imposed on the Governor in executing the duties of Chief Executive is outweighed by the application of open government policy in this instance. Consequently, a legislatively imposed disclosure requirement would constitute a violation of the separation of powers doctrine because the disclosure would unduly interfere with the Chief Executive Officer's ability to perform his duties and is not warranted by an overriding need to promote a policy of open government in this instance.

*Id.* at 224, 409 S.E.2d at 139.

While the separation of powers issue in *Taylor* involved the executive department and the legislative branch, the separation of powers issue in both the *Yoder* and *Carter* cases involved the legislative branch and the judiciary. In *Yoder*, a reporter published a derogatory article in a local newspaper regarding a judge's granting of alcohol licenses to certain establishments. The judge issued a show cause rule against the reporter for contempt. When the reporter appeared, the judge summarily found him in contempt of court. The reporter appealed, alleging that the court did not have the authority to find him

---

[2] From the executive branch's point of view, the requirement to provide such records would create a chilling effect on the governor's communications. The governor would be reluctant to talk in candor and participate in the decision making process if such records would be disclosed. The policy underlying FOIA is "to ensure public access to governmental records and meetings, to avoid an 'atmosphere of secrecy' in conduct of government affairs etc. . . ." *Taylor*, 242 Va. at 224, 409 S.E.2d at 139.

in contempt summarily because the General Assembly had enacted a statute that limited summary contempt to specific situations. He also asserted that in order for insulting language to be contemptible, the statute required that it be personally addressed to the judge in court.[3] The *Yoder* court adopted the *Carter* analysis to determine whether the legislature exceeded its authority to regulate contempt. The test it adopted was:

> Whether the legislation so far deprives the courts of the power of self-defense and self-preservation with respect to contempts, or so far diminishes their power to enforce their judgments, as to render them incapable of the efficient discharge of the duties committed to their care.

*Id.* at 830-31, 57 S.E. at 584-85.

In *Yoder*, the Virginia Supreme Court upheld the validity of the contempt statute by finding that, on the whole, it was a reasonable regulation that did not so far impair the court's authority so as to render it incapable of the efficient exercise of its function. *Id.* at 831, 57 S.E. at 584.

Applying the *Yoder* test to the current child support issue requires this Court to determine whether the proration provision of Va. Code Ann. § 63.2-1954 (1) deprives the court of the power of self-defense and self-preservation with respect to contempt, and (2) diminishes the court's power to enforce its child support orders, so as to render it incapable of the efficient discharge of the duties committed to its care. The statutory limitation of Va. Code Ann. § 63.2-1954 does not interfere with the court's ability to find the father in contempt or to impose a sanction against him, including coercing him to pay his child support obligation by establishing a purge amount for him to pay in order to be released from jail. Because the proration mandate merely affects the distribution of the child support received, the statutory requirement of Va. Code Ann. § 63.2-1954 passes the balancing test

---

[3] The argument for the court's action was that the legislature had exceeded the limits of its authority imposed by the Constitution when it enacted the legislation limiting the court's authority to use summary contempt. The *Yoder* court, quoting *Carter*, stated that "[t]here is an inherent power of self-defence and self-preservation in the courts of this state created by the Constitution. This power may be regulated by the legislature, but it cannot be destroyed or so far diminished as to be rendered ineffectual." *Yoder*, 107 Va. at 828-29, 57 S.E. at 585. The court noted that since the *Carter* decision, the Constitution was amended granting the General Assembly the authority to regulate the contempt powers of the court. *Id.* at 830, 57 S.E. at 584. See Va. Const., Art. 4, § 14 (1995). By using the term "regulate" instead of a term such as "control," the *Yoder* Court held that the authority was similarly espoused in *Carter*. *Id.* at 830, 57 S.E. at 585.

established by the Virginia Supreme Court in *Yoder* and does not diminish the court's power of self-defense and self-preservation. While not all the money paid will go to one mother to satisfy some or all of her arrears, all of the father's children will receive a portion of the monies he pays to purge himself of contempt.

The policies underlying the proration statute appear to be:

1. To insure that all of the children benefit from any payments made by one obligated under multiple child support orders.

2. To ensure in multiple child support cases that current monthly child support payments are satisfied before any arrears are paid, and

3. To ensure an equitable disbursement of child support funds among multiple orders based on the proportional share due under each.

The policies underlying the court's ability to enforce its orders are:

1. To ensure that children are provided for, and

2. To provide the court with a mechanism to coerce payment to satisfy the requirements of the court's order.

In analyzing the proration statute against the backdrop of the contempt power of the Court, the question is which set of policies outweighs the other. If courts ignore the proration statute, they encourage a self-help mentality or a first-come, first-served approach to child support enforcement whereby the family who makes it before the judge first wins.[4] This also encourages forum shopping, as the range of time between filing and hearing dates varies widely from court to court. Families whose child support orders are located in jurisdictions where there is less of a lag time would benefit.

It is clear that the distribution of child support payments must be regulated to ensure fairness to all similarly situated children. Therefore, when the appropriate line of separation is drawn between legislative enactment and judicial pronouncements, the proration requirement set forth in Va. Code Ann. § 63.2-1954 does not infringe on the court's authority to enforce its own child support orders or render it incapable of the efficient discharge of the duties

---

[4] Although the court's perspective focuses on the desperate financial family situation currently before it, the other children who are not before the court are also likely to be in similar need. The inequities of not prorating may be demonstrated by taking an example of a father with four children. Two of them reside with his first wife and the other two reside with his second wife. One court holds the father in contempt and sentences him to incarceration with a substantial purge that he pays. These funds are paid solely to the first wife. Then a month later, the father is before another court for not paying support for his other two children with his second wife. He is found in contempt, given a jail sentence and is allowed to purge his contempt by paying the same amount as previously ordered. But this time, he is unable to come up with the funds and serves the full sentence. The second family receives nothing. This detrimentally affects those two other children who may be in just as necessitous circumstances as the first two children.

committed to its care. Unlike in *Taylor*, the proration statute does not create a chilling effect on the judiciary. Here, as in *Yoder*, the court retains its authority to enforce its orders. The *Yoder* court still had the authority to pursue contempt against the reporter, just not in summary fashion without providing due process rights. Under the proration statute, a court may still jail the father and require a purge payment, with one narrow limitation, the court may not direct how the funds are to be disbursed by the Division. The Division must comply with Va. Code Ann. § 63.2-1954 and distribute the proportionate share of the child support funds among all the father's families or children.

## Conclusion

For the reasons stated, the Orders below are reversed and the Division of Child Support Enforcement is ordered to prorate the lump sum payments ordered to be made pursuant to the juvenile court orders in accordance with the provisions of Virginia Code § 63.2-1954.

The Clerk of this Court is directed to send attested copies of this Opinion and Order to Steven P. Roadcap, Esquire, Special Counsel, Division of Child Support Enforcement, to Rick Allen Bridges, to Lisa F. Mitchell, to Clifton F. Simmons, and to Tina D. Fox.