IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**

November 02, 2023 02:31 PM
ST-2019-CV-00602
TAMARA CHARLES
CLERK OF THE COURT

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS / ST. JOHN

| | |
|---|---|
| JODY OLSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFF, <br><br> V. <br><br> VIRGIN ISLANDS WATER AND POWER AUTHORITY AND LAWRENCE J. KUPFER, <br><br> DEFENDANTS, <br><br> AND <br><br> GOVERNMENT OF THE VIRGIN ISLANDS, <br><br> INTERVENOR. | Case No. ST-2019-CV-00602 <br><br> Class Action <br><br> Complex Litigation Division <br><br> Jury Trial Demanded |

Cite as: 2023 VI Super 64

**Appearances:**

**JOSEPH A. DIRUZZO, III, ESQ.**
DiRuzzo & Company
Ft. Lauderdale, FL 33301
*For Plaintiff*

**DIONNE G. SINCLAIR, ESQ.**
**PATRICIA QUINLAND, ESQ.**
Virgin Islands Water and Power Authority
St. Thomas, VI 00804

**THOMAS J. WELLING, JR.** (*pro hac vice*)
Venable LLP
New York, NY 10020
*For Defendants Virgin Islands Water and Power Authority and Lawrence J. Kupfer*

**IAN S.A. CLEMENT, ESQ.**
Virgin Islands Department of Justice
St. Thomas, VI 00802
*For Intervenor Defendant Government of the Virgin Islands*

## MEMORANDUM OPINION and ORDER

**WILLOCKS, Administrative Judge.**

¶1      **BEFORE THE COURT** are ancillary motions that must be addressed before the substantive motions they pertain to can be ruled on. Plaintiff Jody Olson (hereinafter "Olson" or "Plaintiff") filed a motion for leave to file her reply out of time. Defendants Virgin Islands Water and Power Authority (hereinafter "WAPA") and Lawrence J. Kupfer (collectively "Defendants") filed a motion for an extension of time to file their response. Both motions relate to a motion Plaintiff filed to declare two statutes unconstitutional. However, neither Plaintiff nor Defendants needed additional time because Standing Orders governing the Complex Litigation Division already gave them more time than they requested. The third motion addressed herein is a motion Olson filed, concurrently with her constitutional challenge, to exceed the page limits for her constitutional challenge. Olson did not obtain leave in advance, and the Staff Master later issued a recommendation on the constitutional challenge, even though these ancillary motions, technically, were still pending. For reasons explained further below, the Court will dismiss the additional time motions, and grant the motion to exceed the page limits. The Staff Master may not have had the authority to rule on the page limits motion, but the Staff Master could have addressed the additional time motions by discussing them with the parties, which may have prompted Olson and Defendants to withdraw them. The Staff Master also could have addressed the page limits motion by formal or informal recommendation or report. Ancillary motions must be resolved before substantive motions are addressed, and that includes by recommendation. In this instance, however, the extension of time motions will be denied because they did not have to be filed and, even though Olson did not present compelling reasons for exceeding the page limits, the Court will nonetheless exercise its discretion and grant the motion because denying it at this juncture would only cause further delay.

## I.    PROCEDURAL BACKGROUND

¶2     Olson commenced this action against Defendants seeking declaratory and injunctive relief regarding, *inter alia*, WAPA's billing practices and solvency. *See generally Olson v. V.I. Water & Power Auth.*, 2023 VI Super 61, ¶ 2. Olson amended her complaint before the Defendants appeared to assert claims on a class basis. Defendants appeared, answered the complaint, and moved for judgment on the pleadings. After a delay unrelated to this Opinion, *cf. id.* ¶¶ 3-4, this Court held a status conference where "the Court inquired into the Defendants' assertion that the Court could not grant Olson (or the class) any relief because Sections 111(a) and 120 of Title 30 of the Virgin Islands Code, respectively, exempt all property of WAPA from judicial process or execution, and prohibit the issuance of injunctions against WAPA." *Id.* ¶ 4. "Olson asked for leave to consider the issues and file a response." *Id.* From the bench the Court granted her thirty days to file a brief in response and the Defendants fifteen days to reply. (*See* Hr'g Tr. 21:10-13, 22:8-10 (Sept. 7, 2022).) The response Olson filed was a motion to hold or declare both statutes unconstitutional.[1]

¶3     Olson's constitutional challenge, filed on October 6, 2022, was timely as she submitted it twenty-nine days after the deadline the Court gave from the bench. She also certified compliance with the standing orders governing the Complex Litigaiton Division (*See* Pl.'s Mot. to Declare / Hold §§ 111(a) & 120 of Tit. 30 of the V.I. Code Unconst. & Br. in Supp. of "Juris." 27, filed Oct. 2, 2021 ("The undersigned hereby certifies that the undersigned counsel for the movant has attempted to confer with counsel for the Defendant in a good faith effort to resolve the issues raised in the motion has not received any response.").) *See also* Standing Order No. 4, § 1, *In re: Complex Litig. Cases Pending in the Super. Ct. of the V.I.*, Case

---

[1] To avoid confusion, the Court will refer to Olson's motion to declare / hold Sections 111(a) and 120 of Title 30 of the Virgin Islands Code unconstitutional as her constitutional challenge to avoid confusion with the other motions addressed herein.

No. SX-19-MC-053, 2019 V.I. LEXIS 28, \*6 (V.I. Super. Ct. Mar. 5, 2019) ("For any motion filed in a Complex Litigation Division case, whether in a master case or an individual case, counsel for the moving party shall certify in writing that a good-faith effort was made to resolve the dispute informally before seeking relief from the court.").

¶4      Along with her constitutional challenge, Olson filed a separate motion for leave to exceed the page limits. She asserted that she needed more pages because her constitutional challenge raised "legal issues" that "are novel, complex, and have not previously been addressed by any [c]ourt in the United States Virgin Islands . . . ." (Pl's Mot. for Leave to Exceed Page Limit. 1, filed Oct. 6, 2023.) She also noted, in a certification at the end of the motion, that she had reached out to the Defendants but had not heard back from them. However, she did disclose that she had only attempted to confer with them the day before she filed her motion, "which [wa]s not much time to respond." *Id.* at 2. Defendants did not file a response to Olson's page limit motion.

¶5      Defendants did, however, file their own motion, on October 21, 2022, to request an extension of time to respond to Olson's constitutional challenge. They asked for five days, or until October 26, 2022, and represented that Olson did not oppose their request or object to the length of the delay. Defendants appear to have been unaware of the Standing Orders governing the Complex Litigation Division, which extends the time for filing responses and replies to twenty-eight days, "provided that the parties meet and confer [in advance]." Standing Order No. 4, § 5, 2019 V.I. LEXIS 18 at \*8. Since Olson certified in her constitutional challenge that she attempted to meet and confer with the Defendants, Defendants had "twenty-eight (28) days from the date a motion is served and filed," *id.*, or until Wednesday, November 3, 2021, to file their response. Defendants filed their response on October 26, 2022, five days after their motion for an extension of time was filed, and eight days before the deadline set by Standing Order No. 4. Olson filed a timely reply in support of her constitutional challenge on November 9, 2022.

¶6     Shortly after Olson filed her constitutional challenge, she served notice of that challenge on the Attorney General of the Virgin Islands. *Cf.* V.I. R. Civ. P. 5.1(a). The Government of the Virgin Islands (hereinafter "Government") had sixty days thereafter to intervene. *See* V.I. R. Civ. P. 5.1(c). The Government appeared and filed a timely response in opposition to Olson's constitutional challenge on December 13, 2021. Olson had "twenty-eight (28) days from the date the response is served and filed," 2019 V.I. LEXIS 28 at *8, or until Monday, January 10, 2022, to file her reply, per Standing Order No. 4. On January 6, 2022, Olson filed a motion, concurrently with her reply to the Government's response, to request leave to file the reply out of time. Olson represented that Government did not oppose her request. She also represented that her reply was due on December 27, 2022. She did not indicate if Defendants were consulted or, if they were, what their position was. Neither the Government nor Defendants filed a response.

¶7     In the interim, as briefing was underway on Olson's constitutional challenge, this Court, in its former administrative capacity as Presiding Judge of the Superior Court, filled the staff master position the Supreme Court of the Virgin Islands established to assist the Complex Litigation Division. *See generally In re: Auth. for the Creation & App't of Staff Master for the Complex Litig. Div. of the Super. Ct. of the V.I.*, Admin. Order No. 2021-0012, 2021 V.I. Supreme LEXIS 14 (V.I. Aug. 12, 2021). The Staff Master was appointed on October 21, 2021, and began exercising the duties and responsibilities of the position on or about December 1, 2021. With respect to this case, the Staff Master granted a motion Olson filed to continue the December 9, 2021 status conference this Court had set from the bench on September 7, 2021. The Staff Master continued the status conference to January 7, 2023 with the parties directed to appear remotely before him and argue all pending motions. A subsequent hearing, initially scheduled for April 1, 2023, was held on May 6, 2023.

¶8     On October 18, 2022 the Staff Master issued a recommendation that addressed Olson's

constitutional challenge and the Defendants' motion for judgment on the pleadings, as well as two other

motions Olson filed earlier in the case – a motion to take judicial notice and a motion to deem conceded,

both in March 2020. The Recommendation did not address Olson's motion to exceed the page limits, the

Defendants' motion for an extension of time to file their response, or Olson's motion for leave to file her

reply to the Government's response out of time. The Recommendation did acknowledge the page limits

motion, however. In explaining why that motion was not addressed, the Staff Master stated that he

"presume[d] that this motion is not a matter pertinent to the proceedings and, for this reason, [did] not

recommended a ruling." (Recommend. 43 n. 9, entered Oct. 18, 2022.) Instead, the Staff Master

> proceeded under the assumption that the Court would grant [Olson's page limits
> motion] . . . since the motion is unopposed and to deny it at this juncture would only mean
> further delay because Olson would have to be given leave to refile her motion within the
> page limits—the present motion exceeds the page limits by approximately six pages—
> which would also be problematic as the undersigned already heard argument on the motion.
> *Id.*

¶9     Three days before responses were due, *see* V.I. R. Civ. P. 53(f)(2) (21-day deadline to respond to

recommendations of masters), Plaintiff and Defendants filed a joint motion, on November 5, 2022, to

request more time to prepare their responses, and simultaneous deadlines for filing responses and replies.

The Court granted that request on November 18, 2022, as extended on December 7, 2022, and gave

Plaintiff and Defendants until December 15, 2022 file responses, and until January 19, 2023 to file replies.

¶10    Olson timely responded to the Recommendation with a 32-page motion to adopt in part, to modify

in part, and to reject in part. As with her constitutional challenge, Olson filed a concurrent motion to

exceed the 20-page limit on motions, citing in support the novel issues addressed by the Recommendation

as well as its length (54 pages), and the nature of her responses – to adopt in part, reject in part, and modify

in part. Defendants also timely filed their response. Although their submission reads more like a further

response or reply to the motions addressed by the Recommendations, Defendants did move the Court to adopt and to reject certain portions of the Recommendation. Thus, the Court has treated it like a motion to adopt in part and reject in part. *See Olson*, 2023 VI Super 61 at ¶ 17 n.4. Unlike Olson, the Defendants' response was only 21-pages, but it was also a page over the limit, without a concurrent request to exceed the page limit. Relevant here, neither side referenced any of the pending ancillary motions, i.e., Olson's prior motion to exceed pages limits, Defendants' motion for an extension of time, or Olson's motion to file her reply to the Government's response out of time. The parties also did not reference the Staff Master's failure to address the latter two motions or his assumption that the Court would grant the former motion.

## II. DISCUSSION

¶11     "The Court begins with the premise that all motions remain pending 'until ruled upon, dismissed, or withdrawn.'" *Mitchell v. Gen. Eng'g Corp.*, 67 V.I. 271, 277 (Super. Ct. 2017) (quoting *Der Weer v. Hess Oil V.I. Corp.*, 60 V.I. 91, 98 (Super. Ct. 2014)). Additionally, ancillary motions have to be addressed before substantive motions can be ruled on. *See Daniel v. Borinquen Insulation Co.*, Nos. SX-98-CV-192, *et seq.*, 2017 V.I. LEXIS 117, *22 (V.I. Super. Ct. July 28, 2017) ("Courts must 'first resolve the related, or ancillary, motions' if 'granting or denying these motions would affect the arguments and issues that can be considered.'" (quoting *Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 120 (Super. Ct. 2016)). Here, in addition to addressing Olson's motion to exceed the page limits, the Defendants' motion for an extension of time to file their response to Olson's constitutional challenge, and Olson's motion to accept her reply out of time, the Court must also two other issues. First, Olson assumed her motion to exceed the page limits would be granted because she filed a motion that exceeded the page limits on the very same day that she requested leave to exceed the page limits. Second, the Staff Master did not address any of the

ancillary motions before issuing his Recommendation, and presumed the Court would grant Olson's page limits motion. The Court turns to the second issue first.

¶12    The Court acknowledges that by referencing—but not addressing—Olson's page limits motion in a footnote to the Recommendation, the Staff Master apparently believed he lacked the authority to rule on it. That appears to be correct. The staff master assigned to the Complex Litigation Division has the authority to "[r]egulate all proceedings by and including but not limited to addressing pretrial and post-trial matters in the master case and individual cases under the master case[.]" *In re: Auth. for the Creation & App't of Staff Master*, 2021 V.I. Supreme LEXIS 14 at *4. If this case had been grouped under a master case with other individual cases, then the Staff Master clearly would have had the authority to decide these ancillary motions. But this case is not grouped under a master case.

¶13    The staff master's authority is situated in an Administrative Order and court orders, like statutes and court rules, are interpreted according to their plain language. *Cf. Kim v. Ramos*, 632 S.W.3d 258, 269 (Tex. Ct. App. 2021) ("We interpret court orders, like the Texas Supreme Court's Twenty-Ninth Emergency Order, according to the plain meaning of their terms."); *accord Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 967 (8th Cir. 2010) ("'Interpretation of court orders presents questions of law' and 'as a general rule, when the language is unambiguous, it shall be construed according to its plain meaning.'" (citation and brackets omitted)); *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000) ("Once the order is approved, however, 'regardless of what the district court had in mind at the time it signed the order, the order must be interpreted as its plain language dictates.'" (citation, brackets, and ellipsis omitted)). However, if language in a court order is ambiguous, courts look to the canons of construction for guidance. *Cf. Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 23 (D.D.C. 2014) ("Courts have used canons of statutory interpretation to clarify court orders." (collecting cases)); *accord State v. Rita*, 513 P.3d 437 (Haw. Ct. App. 2022) ("While canons of statutory construction

may be applied to court orders, 'if the language of the order is unambiguous and applying it in its literal sense would not produce a result that is absurd, unjust, or at odds with governing law, we are bound to enforce the plain meaning' of the court order." (citation and brackets omitted)).

¶14    The word "address" is not defined in Administrative Order No. 2021-0012, or in the Virgin Islands Rules of Civil Procedure, and can have different meanings in ordinary use. Thus, it is ambiguous. Address can mean speaking to one or more people, as in addressing a crowd of people. *Cf. Yoder v. Commonwealth*, 832, 57 S.E. 581, 584 (Va. 1907). Address can mean a place where one can be reached, as in a home address or an e-mail address, or to write that location down, as in to address an envelope. *Cf. United States v. Havelock*, 664 F.3d 1284, 1293 (9th Cir. 2012) ("[T]he verb 'address' means 'to write or otherwise mark directions for delivery on' a letter, and 'to speak, write, or otherwise communicate directly to.'" (quoting *Webster's Third Int'l Dictionary* 24 (1976)). Relevant here, address can also mean to deal with something, as in to address a problem. *Cf. Friends of Yosemite Valley v. Scarlett*, 439 F. Supp. 2d 1074, 1078 (E.D. Cal. 2006) ("'Address' means to 'deal with or discuss.' (quoting *Random House Webster's College Dictionary* 16 (1991))). This is often the meaning used in legal settings. *Cf. Jabary v. McCullough*, 325 F.R.D. 175, 194 (E.D. Tex. 2018) ("[A]ddress means 'to direct the efforts or attention of (oneself)' or 'to deal with.'" (citation to online dictionary omitted)). And in a judicial settings, "[t]he term 'address' means 'to deal with.' . . . [A]n issue is not 'addressed' unless it is dealt with by the court, which implies ruling on the issue.'" *Bevan v. State*, 499 P.3d 191, 195 (Utah Ct. App. 2021) (citations omitted).

¶15    Although the staff master has broad authority to "[r]egulate *all proceedings* . . . in the master case and individual cases under the master case" "by and including *but not limited to* addressing pretrial and post-trial matters[,]" *In re: Auth. for the Creation & App't of Staff Master*, 2021 V.I. Supreme LEXIS 14 at *4 (emphasis added), the staff master is not a judicial officer. *Cf. Stanley v. V.I. Bureau of Corr.*, 2022 VI Super 77, ¶ 13 ("'Masters are quasi-judicial officers.'" (citation and brackets omitted)). "While the

system of resorting to [m]asters is one of long standing and undoubtedly has salutary effects resulting in

the more expeditious dispatch of the judicial process, the system cannot supplant the ultimate role of

judges in the judicial process itself." *Ellis v. Ellis*, 311 A.2d 428, 430 (Md. 1973). Thus, inherent

limitations on what a master can and cannot do remain.

¶16     The word address means both to decide and to deal with. *See Bevan*, 499 P.3d at 195.The staff

master has authority in all complex cases to "[e]stablish, manage, and supervise discovery plans and other

related schedules and issue orders resolving discovery disputes . . . ." *In re: Auth. for App't and Creation

of Staff Master*, 2021 V.I. Supreme LEXIS 21 at *2-3 The staff master also has authority "[t]o hold case

management and scheduling conferences . . . ." *Id.* at *4. Thus, the staff master clearly can address

discovery disputes and case management issues by deciding those issues. However, only judges can issue

dispositive orders. Thus, even though the staff master has authority to address all pre- and post-trial issues,

which, technically, could include dispositive motions, the staff master cannot replace the judge. Thus,

address in the phrase "addressing pretrial and post-trial matters" must mean more than decide.

¶17     As noted, address, in a judicial context, can also mean to deal with, and one way in which the staff

master can deal with pending issues is by recommendation. However, the staff master already has

authority in all complex cases to "[m]ake formal and informal recommendations and reports to the judge

regarding any matter pertinent to the proceedings[.]" *Id.* at *3. Thus, the language granting the staff master

authority to regulate all proceedings in master cases and address pretrial and post-trial matters must mean

something other than the authority already granted elsewhere in the same Administrative Order. When

language in statutes or court rules can have more than one meaning, courts look to canons of construction

for guidance, and one those canons instructs that words must be interpreted to avoid rendering other

provisions superfluous. *Cf. Corraspe v. People*, 53 V.I. 470, 482-83 (2010). Clearly, the staff master's

authority to regulate master cases and address pre- and post-trial matters must mean something other than

the authority to issue recommendations because that authority is given elsewhere in the same Order. Something else must be meant, otherwise this language is superfluous. *Contra id.* at 482-83.

¶18    While it is unnecessary in this Opinion to address the full scope of the staff master's authority to regulate proceedings and address pre- and post-trial matters in master cases and the individual cases grouped under master cases, it is necessary to acknowledge this authority to draw a contrast between master cases and other complex cases not being managed under a master case. The broad authority granted to the staff master to regulate proceedings in master cases and address pre- and post-trial matters certainly can encompass the authority to decide ancillary matters like motions for extension of time or to exceed page limits. After all, clerks of court can be given limited authority to grant additional time or to modify briefing requirements. *Cf.* V.I. R. App. P. 21(d) ("Pursuant to a Rule or order of the Supreme Court, the Clerk may entertain and dispose of specified types of procedural motions which are ministerial in nature, relate to the preparation or printing of the appendix and briefs on appeal, or relate to calendar control."). Granting similar authority to a quasi-judicial officer would not be improper. But there is no similar grant of authority for individual complex cases such as this that are not being managed under master cases.

¶19    The staff master's authority to establish and manage schedules in complex cases is clearly limited to discovery, and a motion to exceed page limits has nothing to do with discovery. Likewise, while the staff master's authority to hold case management and scheduling conferences in complex cases necessarily implies authority to issue scheduling orders, and while scheduling orders could set different deadlines for filing responses and replies, scheduling orders are not issued to extend deadlines for specific responses or replies. Case management orders also mange cases and, presumably, could allow for additional pages for motion papers if circumstances call for it. But case management orders are not issued to extend page limits for specific motions. Clearly, except in master cases, the staff master has no authority to rule on ancillary motions like those at issue here.

¶20    However, the staff master can deal with ancillary motions by discussing them with the parties or by issuing a recommendation. The staff master has authority in all complex cases to make formal or informal recommendations to the judge regarding any matter pertinent to the case. *See In re: Auth. for the Creation & App't of Staff Master*, 2021 V.I. Supreme LEXIS 14 at *3 ("Make formal and informal recommendations and reports to the judge regarding any matter pertinent to the proceedings[.]"). The Staff Master could have issued a formal recommendation on the ancillary motions here. The staff master also could have informally reported to the Court that the two extension of time motions were superfluous and could be denied based on Standing Order No. 4. The Staff Master also could have discussed Standing Order No. 4 with Plaintiff and Defendants and informed them that their respective motions were unnecessary based on Section 6 of Standing Order No. 4. If that discussion had occurred, Plaintiff and Defendants may have withdrawn their motions. "'A motion withdrawn leaves the record as it stood prior to the filing of the motion, i.e., as though it had not been made.'" *Mitchell*, 67 V.I. at 277 (citation omitted). They did not. So, the Court has had to address them.

¶21    To be sure, the Court's discussion about the Staff Master's authority is not intended to excuse Plaintiff or Defendants. Olson certified compliance with Section 5 of Standing Order No. 4 in her constitutional challenge, which begs the question why she then filed a motion to request for less time than what Section 6 of that same Standing Order already gave her. "Courts do not issue orders for the sake of issuing orders." *In re: Cases Under Bankr. Stay*, 74 V.I. 330, 337 (Super. Ct. 2021). Plaintiff and Defendants are on notice of the Standing Orders and are expected to follow them insofar as they remain in force and have not been implicitly superceded. Here, Plaintiff and Defendant each filed a motion they did not need to file, which increased the work of the Superior Court. Clerks had to process those motions, and the Court has had to address them. But rather than leave both motions unaddressed, the Staff Master also could have addressed them, either by recommendation (formal or informal0 or by discussion with the

parties. It is not for this Court to dictate when the staff master must file formal versus informal reports and recommendations. However, by not addressing either extension of time motions or the page limit motion, the Staff Master unintentionally increased the work of the Court because ancillary motions must be addressed before substantive motions can be ruled on. It just so happens that, in this instance, both additional time motions must be dismissed and, for this reason, the failure to address them did not seriously impact the proceedings. Olson's motion to exceed the page limits is different, however.

¶22    To be clear, the Court does acknowledge and even shares the Staff Master's concern regarding the posture of the proceedings and not wanting to take action that needlessly increases cost and delay. In fact, the Virgin Islands Supreme Court itself has acknowledged in a similar context that "practical considerations concerning efficient judicial administration" are the overarching concern. *Hansen v. O'Reilly*, 62 V.I. 494, 510 (2015) (*per curiam*) (quoting *Harvey v. Christopher*, 55 V.I. 565, 569 n.2 (2011)). But here, the Court is, effectively, forced into granting Olson's motion.

¶23    All motions must be twenty pages or less unless leave to include more pages is obtained in advance. *See* V.I. R. Civ. P. 6-1(e). Motions must also "be in writing and contain appropriate citations to supporting legal authority." *Evans-Freke v. Evans-Freke*, 75 V.I. 407, 430 n.8 (2021) (Swan, J., concurring) (citing V.I.R. Civ. P. 7(b); V.I.R. Civ. P. 6-1(a)(1)-(2)). Here, Olson requested, but did not obtain, leave before she filed a motion that exceeded the page limits. In support, she explained that the novelty and complexity of the issues, and the fact that no court in the Virgin Islands had addressed it, supported granting her leave to exceed the page limit. The constitutional challenge Olson filed concurrently with her request exceeded the page limits by seven pages, excluding the cover page, table of contends, and table of authorities. *Cf.* V.I. R. Civ. P. 6-1(e)(2) ("This page or word limit does not include any cover page, caption, table of contents, table of authorities, appendices or exhibits, the statements of undisputed or disputed facts as provided in Rule 56(c).").

¶24    While this Court has agreed with "the reasoning and concerns of why courts impose page limits on court papers," *Gerace v. Mosler*, 76 V.I. 195, 200 (Super. Ct. 2022) (citations omitted), this Court has also acknowledged that "Virgin Islands courts have the inherent authority to economically manage their dockets to best promote the fair and efficient resolution of the dispute between the parties." *Id.* at 199. More importantly, "'requesting leave to exceed the page limits should be the exception, not the norm.'" [2] *Id.* at 201 (quoting *Augustin v. Hess Oil V.I. Corp.*, 67 V.I. 488, 503 (Super. Ct. 2017)). Defendants were able to keep their response to Olson's constitutional challenge within the page limits. At this juncture, however, denying Olson's motion would mean that the Court must strike her constitutional challenge, which would, in turn, have a domino effect on the proceedings, possibly requiring the Staff Master to revise his recommendation and Olson and Defendants to refile their motions in response to a revised recommendation. Furthermore, as this Court recently directed the Government to respond to both motions, *see Olson*, 2023 VI Super 61 at ¶ 21, a portion of that ruling would be nullified if the Court were to strike Olson's constitutional challenge now and order her to refile it. None of this is warranted here. *Accord Hansen*, 62 V.I. at 510; *see also Gerace*, 76 V.I. at 199.

¶25    The fair and efficient outcome here is to grant Olson's motion and deem her constitutional challenge proper. The Court must emphasize, however, that Olson caused this problem by filing her

---

[2] This is the first of two motions Olson filed to exceed page limits. The Court granted a subsequent request Olson filed to exceed the page limits for her response to the Staff Master's Recommendation. The reason for granting that motion was because the Staff Master issued one recommendation that addressed four motions. Again, it is not for this Court to dictate how the staff master issues recommendations. However, the Court trusts that the Staff Master will find an appropriate balance between issuing one recommendation per motion, on the one hand, and one recommendation on multiple, unrelated motions, on the other hand, particularly if it necessitates a motion to exceed the page limits. Olson's responses to the Recommendation differed for each motion and limiting her to twenty pages might have bordered on an abuse of discretion, and certainly would have hampered the arguments she made. It was for this reason that the Court granted Olson leave to exceed the page limits on her motion to adopt in part, reject in part, and modify in part. Here, however, Olson was not responding to anyone. She was the one bringing the constitutional challenge. So, she had control over how much or how little she included. The Court is hard-pressed to find that the novelty and complexity of the issues alone warranted seven additional pages, particularly since the Defendants were able to respond within the page limits. But, as explained above, denying Olson's motion at this juncture would be more problematic.

motion to exceed page limits concurrently with her constitutional challenge. Rule 6-1 of the Virgin Islands Rules of Civil Procedure provides that "all motions, responses and replies filed with the court shall not exceed the greater of 20 pages or 6,000 words in length unless leave of court has been *obtained* in advance for a longer submission." V.I. R. Civ. P. 6-1(e)(2) (emphasis added). Leave must be obtained, not just requested, in advance. Olson sought leave to exceed the page limits on the same day that she filed her constitutional challenge, which then triggered the deadline for Defendants to file their response. The Staff Master then complicated matters by not addressing Olson's page limits motion before issuing his Recommendation on her constitutional challenge. The better approach here would have been for Olson to await a ruling and, because she did not wait, for the Staff Master to address her motion in a formal or informal report or recommendation. Ancillary motions must be decided before the substantive motions they relate to can be addressed. To undo all of this now would be contrary to how courts must interpret rules. *Cf. Evans-Freke*, 75 V.I. at 430 n.8 (noting that "the bar and the judiciary must diligently and conscientiously apply" "the mandates of Rule 1 . . . ."); *see* V.I. R. Civ. P. R. 1 ("These rules should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").. Therefore, the Court will grant Olson's motion to exceed the page limits.

## III. CONCLUSION

¶26      For the reasons stated above, the Court concludes that the Defendants' motion for an extension of time and Plaintiff's motion for leave to file her reply out of time must be dismissed. Neither motion had to be filed because, pursuant to the standing orders governing the Complex Litigation Division, Plaintiff and Defendant had more time than they requested, which rendered their submissions timely, not untimely. The Court will also grant Plaintiff's motion to exceed the page limits. Although parties seeking leave to exceed page limits in their motions, responses, or replies must obtain leave in advance, which Plaintiff did

not do here, denying leave now would only increase costs and delay Accordingly, for the reasons explained above, it is hereby

**ORDERED** that the Motion for Leave to Exceed Page Limitation filed by Plaintiff Jody Olson on October 6, 2021, is **GRANTED**, and the Motion to Declare/Hold Sections 111(a) and 120 of Title 30 of the Virgin Islands Code Unconstitutional and Brief in Support of "Jurisdiction" filed by Plaintiff Jody Olson on October 6, 2021, is **ACCEPTED**. It is further

**ORDERED** that the failure of Defendants Virgin Islands Water and Power Authority and Lawrence J. Kupfer to request leave to exceed the page limits on their Response to Staff Master's Recommendation filed on December 15, 2022, is **EXCUSED**, and the Response is **ACCEPTED**. Defendants are cautioned, however, against further failure to follow court rules. It is further

**ORDERED** that the First Unopposed Motion for Extension of Time to Respond to Plaintiff's Motion to Declare/Hold Sections 111(a) & 120 of Title 30 of the Virgin Islands Code Unconstitutional & Brief in Support of "Jurisdiction" filed by Defendants Virgin Islands Water and Power Authority and Lawrence J. Kupfer on October 21, 2021, is **DENIED as moot**. It is further

**ORDERED** that Unopposed Motion for Leave to File Out of Time filed by Plaintiff Jody Olson on January 6, 2022, is **DENIED as moot**.

**DONE and SO ORDERED** this ___2nd___ day of **November, 2023.**

**HAROLD W.L. WILLOCKS**
Administrative Judge of the Superior Court

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
　　Court Clerk
Dated: ___11/2/2023___

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
November 09, 2023 03:30 PM
ST-2019-CV-00602
TAMARA CHARLES
CLERK OF THE COURT

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS / ST. JOHN

| | |
|---|---|
| JODY OLSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>V.<br><br>VIRGIN ISLANDS WATER AND POWER AUTHORITY AND LAWRENCE J. KUPFER,<br><br>DEFENDANTS,<br><br>AND<br><br>GOVERNMENT OF THE VIRGIN ISLANDS,<br><br>INTERVENOR. | Case No. ST-2019-CV-00602<br><br>Class Action<br><br>Complex Litigation Division<br><br>Jury Trial Demanded |

### ERRATA ORDER

**THIS MATTER** is before the Court *sua sponte* to correct the following scrivener's errors in the

Memorandum Opinion and Order dated and entered November 2, 2023 (2023 VI Super 64).

On page 2, eleven lines down from the start of paragraph 1, the word "dismiss" is **DELETED** and **REPLACED** with "deny as moot"; and the word "dismissed" on page 13, two lines up from paragraph 22, and on page 15, in paragraph 26, are **DELETED** and **REPLACED** with the word "denied"; and on page 9, in paragraph 14, delete the word "a" after "in" and before "judicial".

**DONE and SO ORDERED this** \_\_\_\_\_ **day of November, 2023.**

_____
**HAROLD W.L. WILLOCKS**
Administrative Judge of the Superior Court

**ATTEST**:
Tamara Charles
Clerk of the Court

By: _____
Court Clerk
Dated: _____11/9/2023_____